*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TIMOTHY TERREL JONES,

        Defendant-Appellant.

UNPUBLISHED
December 26, 2019

No. 344198
Wayne Circuit Court
LC No. 17-008365-01-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TIMOTHY TERREL JONES,

        Defendant-Appellant.

No. 344509
Wayne Circuit Court
LC No. 17-008367-01-FH

Before: BECKERING, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

In these consolidated appeals, defendant, Timothy Terrel Jones, appeals as of right his jury trial convictions of aggravated stalking, MCL 750.411i(2). In Docket No. 344198, defendant appeals his conviction for one count of aggravated stalking in violation of MCL 750.411i(2)(c), based on the jury's finding of one or more credible threats against the victim in the time frame between June 8, 2017 and July 27, 2017. In Docket No. 344509, defendant appeals his conviction for one count of aggravated stalking in violation of MCL 750.411i(2)(a), based on the jury's finding of at least one act of stalking in violation of a restraining order after defendant learned of its issuance. The prosecutor tried defendant separately on each charge, and

-1-

both juries convicted him as charged. We consolidated the appeals pursuant to MCR 7.216(A)(7).[1] Finding no error, we affirm.

## I. FACTUAL BACKGROUND

Defendant's two convictions arise from a series of interactions that occurred between defendant and the victim in the late spring and summer of 2017. According to testimony presented at trial, defendant and the victim first met near Eastern Market in Detroit, Michigan, in May 2017. They exchanged telephone numbers and, for the next nine or ten days, talked regularly on the telephone. During their conversations, defendant revealed that he had been in prison for 22 years, which the victim was unaware of when she first met defendant, and that "he was interested in startin[g] to sell drugs . . . ." The victim decided to cut off communication with defendant before their relationship went any further. On June 6, 2017, she told defendant that she did not want to stay in contact with him and asked him to stop calling her. According to the victim, defendant subsequently began texting and calling her repeatedly, stating that she committed to a relationship with him and demanding to know why she did not want to have a relationship with him. The victim testified that defendant texted her between 15 and 20 times a day, and would fill her voicemail inbox with voice messages.

The victim reportedly told defendant that she was going to get a personal protection order (PPO) if defendant did not stop calling her. In response, defendant began antagonizing the victim and threatening to kill her. Defendant continued calling, texting, and generally threatening the victim from June 5, 2017 through mid-August 2017. The victim was afraid to be at home alone and asked her brother to stay at her house because she felt unsafe. Defendant began watching the victim enter and exit her house and would call or text her to tell her that he could see her when she was home.

Defendant testified to a wholly different version of the events at issue.[2] Defendant testified that the victim called him on the telephone up to "fifty times a day," and that she constantly asked him for money. He further stated that his relationship with the victim ended because she mistakenly believed he was involved in a relationship with another woman. Defendant denied calling or texting the victim after she ended their relationship and denied watching the victim while she was at home.

The victim obtained a personal protection order (PPO) against defendant on July 27, 2017, and Corporal Sean White of the Wayne County Sheriff's Department served the PPO on defendant through oral notification on August 10, 2017. Defendant continued to send the victim aggressive text messages and threatened to kill her. The victim testified that, on one occasion in August 2017, she arrived at her house to find defendant sitting on her front porch. Defendant

---

[1] *People v Jones*, unpublished order of the Court of Appeals, issued November 13, 2019 (Docket Nos. 344198 and 344509).

[2] Defendant testified at his first trial, at which he was charged with violating MCL 750.411i(2)(c). He did not testify at his second trial.

walked toward the victim's car and attempted to talk to her, but the victim drove away to avoid interacting with defendant. On another occasion, defendant arrived at the victim's house unannounced and got into an argument with her brother, who asked defendant to leave the house.

The victim twice called the police in response to defendant's uninvited presence at her house. On both occasions, defendant managed to leave the victim's house before the police arrived. Police officers asked the victim if she knew a place where they could find and arrest defendant. On August 26, 2017, at the behest of police, the victim arranged to meet defendant at a local Coney Island restaurant, where police arrested him. As previously indicated, defendant was charged with and convicted of aggravated stalking in violation of MCL 750.411i(2)(c), for conduct occurring prior to issuance of the PPO, and in violation of MCL 750.411i(2)(a), for conduct occurring after Corporal White notified defendant of the PPO. The trial court sentenced defendant to prison terms of one to five years for violation of MCL 750.411i(2)(c), and 18 months to 5 years for violation of MCL 750.411i(2)(a). These appeals followed.

## II. SUBSTITUTION OF COUNSEL

In both appeals, defendant argues that the trial court violated his right to counsel by denying his requests for the appointment of substitute counsel and by failing to hold a hearing regarding the issue of substitution of counsel. We disagree.

"Generally, whether a defendant's right to counsel was violated is a constitutional issue that this Court reviews de novo." *People v Hoang*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 336746), slip op at 4. This Court reviews a trial court's decision denying substitution of counsel for an abuse of discretion. *People v McFall*, 309 Mich App 377, 382; 873 NW2d 112 (2015). An abuse of discretion occurs when the trial court "issues a decision that falls outside the range of principled outcomes." *Id*. Along with his appellate brief, defendant submitted an affidavit summarizing his reasons for requesting a new attorney. However, because defendant did not present this affidavit to the trial court, its presentation on appeal constitutes an unauthorized expansion of the record. *People v Seals*, 285 Mich App 1, 20-21; 776 NW2d 314 (2009) (noting that the affidavits the defendant submitted on appeal "are not part of the lower court record and, therefore, could not be considered"); see also *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013) ("Defendant did not present this information in the lower court . . . and may not now expand the record on appeal.").[3] Our review is limited to the lower court record. See *Seals*, 285 Mich App at 2-21.

"An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced." *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001)

---

[3] Defendant also attached the affidavit to motions for remand, which we denied without prejudice because we were unpersuaded at the time that a remand was necessary. *People v Jones*, unpublished order of the Court of Appeals, issued February 21, 2019 (Docket No. 344198); *People v Jones*, unpublished order of the Court of Appeals, issued March 1, 2019 (Docket No. 344509).

(quotation marks and citation omitted). A defendant's request for the substitution of appointed counsel will generally only be granted "when discharge of the first attorney is for 'good cause' and does not disrupt the judicial process." *People v Buie*, 298 Mich App 50, 67; 825 NW2d 361 (2012) (quotation marks and citation omitted). Whether a defendant has presented good cause for the substitution of his attorney depends on the facts of each specific case. *Id*. Some reasons for substitution that constitute "good cause" include: (1) the development of a legitimate difference of opinion between a defendant and appointed counsel as to a fundamental trial tactic, (2) the "destruction of communication and a breakdown in the attorney-client relationship," and (3) situations in which the attorney "shows a lack of diligence or interest." *McFall*, 309 Mich App at 383 (quotation marks and citations omitted). A trial court is not required to substitute a defendant's counsel solely because the defendant is unhappy or lacks confidence in defense counsel's performance, unsupported by a substantial reason. *Id*. See also *Traylor*, 245 Mich App at 463 ("[D]efendant's mere allegation that he lacked confidence in his trial counsel is not good cause to substitute counsel.").

Defendant asked for new counsel on three occasions. At his arraignment on both charges, the following exchange took place between defendant and the trial court:

> *The Defendant*: Well, I don't know. I'm going to say this right quick. I would like to have a new attorney because this attorney ain't doing nothing [sic] for me. I'd like to have a new attorney.
>
> *The Court*: Well, at this point I'm not going to remove Mr. O'Donnell [defense counsel].
>
> *The Defendant*: I mean—well, I'm just making my case known because—
>
> *The Court*: He's a very good attorney.

At the final pretrial conference for defendant's first trial, defendant asked for "a speedy trial with a directed verdict[,] "a blind draw," "a new judge," and "a change of venue." He also renewed his request for substitute counsel, alleging that defense counsel's performance was deficient because counsel had not provided him a copy of the preliminary examination transcript. The trial court again refused to substitute defendant's counsel, explaining to defendant, "[l]egally, you do not even have a right to any of this stuff. The law says that you only need to know what you're being charged with, that's all." Additionally, in response to defendant's accusations, defense counsel informed the trial court that he visited defendant in jail the day before the final conference and told defendant that he would bring him a copy of his preliminary examination transcript.

Defendant made his third request for substitute counsel at the sentencing hearing for his conviction of violating MCL 750.411i(2)(c). The sentencing hearing was combined with a special pretrial for his impending trial on the charge of violating MCL 750.411i(2)(a). Defendant stated that defense counsel was ineffective because he failed to inform the trial court that "threats is [sic] a misdemeanor," and because defendant never received a copy of the PPO that the prosecution alleged his conduct violated. The trial court attempted to explain to defendant that the charge against him in the first proceeding was brought under MCL

750.411i(2)(c), which involved 1 or more threats to a victim, while the charge in the subsequent case was brought under MCL 750.411i(2)(a), which involved actions in violation of a restraining order. Thus, whether defendant was personally served with the PPO was irrelevant to the conviction for which the court was sentencing him, violation of MCL 750.411i(2)(c). The trial court told defendant that it would not substitute his counsel at the sentencing hearing, but also stated with regard to defendant's upcoming trial on the charge of violating of MCL 750.411i(2)(a), "if you feel that you want to get a new attorney . . . you have the right to file that paperwork with the Court." Defendant did not follow up on the court's recommendation.

Defendant contends that he showed good cause for substitution of counsel because defense counsel did not adequately represent him, failed to provide him with discovery upon request, and failed to make arguments that defendant believed were fundamental to his defense. Defendant further contends that, because he provided proof that substitution of counsel was required, the trial court was obligated to conduct a hearing to determine whether defendant was entitled to a new attorney.

Defendant relies on *People v Strickland*, 293 Mich App 393; 810 NW2d 660 (2011), as authority to support his contention that the trial court had a duty to hold a full evidentiary hearing on the issue of new counsel. In *Strickland*, 293 Mich App at 397, this Court stated, "[w]hen a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record." (Quotation marks and citation omitted.) Defendant interprets this statement to mean that a full evidentiary hearing was required in the present case. However, *Strickland* merely indicates that a trial court must hear a defendant's argument on the issue of substitution of counsel and make a ruling on it; a full evidentiary hearing is required only where there are factual disputes. See *id*. (indicating that the trial court fulfilled its obligation by accepting a copy of the defendant's grievance against his attorney and giving the defendant an opportunity to say whatever he wanted to on the record).

In the present case, although the trial court did not give defendant an opportunity at the arraignment to explain fully his reasons for requesting the substitution of counsel, the evidence shows that the trial court heard and responded to defendant's complaints regarding his attorney at the final pretrial conference and at his sentencing hearing. In addition, at the final pretrial conference, defendant's attorney indicated that he had already told defendant he would get him the transcripts he wanted, and nothing in the record indicates that counsel did not keep his word. At the sentencing hearing/special pretrial, the trial court listened and responded at length to complaints that arose not from any factual disputes, but primarily from defendant's own misapprehensions of the law and his insistence that he should have had a single trial because the charges against him involved a single set of circumstances. Further, the court told defendant that he could file the appropriate paperwork to request substitute counsel for his upcoming aggravated stalking trial, MCL 750.411i(2)(a), but, as already indicated, defendant did not heed the court's advice. Ultimately, this Court cannot conclude that the trial court erred by failing to grant defendant a full evidentiary hearing regarding his request for substitute counsel.

Defendant's contention that he showed good cause for the substitution of counsel likewise fails. Defendant points to nothing in the record indicating that defense counsel's performance was inadequate. Defense counsel did not fail to provide defendant with discovery;

rather, the record makes clear that defense counsel met with defendant and planned to fulfill defendant's request for a copy of the preliminary examination transcript. Defense counsel was not ineffective for failing to tell the trial court that "threats is [sic] a misdemeanor" because aggravated stalking in violation of MCL 750.411i constitutes a felony. MCL 750.411i(3). Further, defense counsel was not ineffective for failing to argue that defendant never received a copy of the PPO. As already indicated, the felony information with respect to Docket No. 344198 indicates that defendant was charged with aggravated stalking under MCL 750.411i(2)(c) because his "course of conduct included the making of 1 or more credible threats against [the victim]; contrary to MCL 750.411i." Thus, defendant's counsel correctly disagreed with defendant's theory that he should base his defense in the first trial on the lack of personal service of the PPO. Moreover, "decisions about defense strategy, including what evidence to present and what arguments to make, are matters of trial strategy, and disagreements with regard to trial strategy or professional judgment do not warrant appointment of substitute counsel." *Strickland*, 293 Mich App at 398.

Defendant has not demonstrated a breakdown in the attorney-client relationship or that he and his attorney had a legitimate difference of opinion regarding a fundamental trial tactic, nor has he pointed to specific situations in which his attorney showed a lack of diligence or interest. See *McFall*, 309 Mich App at 383. The mere fact that defendant was generally unhappy with his counsel's representation or lacked confidence in him, absent a substantial reason, does not constitute good cause for the substitution of counsel. An indigent defendant is not entitled to have the attorney of his choice appointed by simply requesting that the attorney originally appointed be replaced. *Traylor*, 245 Mich at 462. Accordingly, we conclude that the trial court did not violate defendant's right to counsel or abuse its discretion by declining to hold a hearing on the matter and denying defendant's requests for substitute counsel.

## III. DOCKET NO. 344198

In Docket No. 344198, defendant argues that the trial court abused its discretion by admitting into evidence a number of voicemail recordings and text messages because the prosecutor presented no evidence that they were sent to the victim between the relevant dates of June 8, 2017 and July 27, 2017.[4] We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). In the trial court, defendant objected to the admission of the voicemail recordings on the ground that they were undated, properly preserving this claim for appeal. However, he objected to admission of the text messages on the ground that the prosecution presented no evidence that the texts were sent from defendant's telephone number. Therefore, defendant preserved the issue that the trial court improperly admitted undated voicemails, but he did not preserve the issue that the trial court improperly admitted undated text messages because he did not object to the admission of the text messages

---

[4] The prosecution amended the felony information to charge defendant with aggravated stalking based on alleged conduct occurring between June 8, 2017 and July 27, 2017.

on the same ground in the trial court as he now asserts on appeal. See *id*. This Court reviews preserved evidentiary issues for an abuse of discretion. *Id*. An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted). This Court reviews unpreserved issues for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "An error is plain if it is 'clear or obvious,' and it affects substantial rights if it 'affected the outcome of the lower court proceedings.' " *People v Miller*, 326 Mich App 719, 725-726; 929 NW2d 821 (2019), quoting *Carines*, 460 Mich at 764-765.

The absence of dates on the text messages and voicemail recordings did not necessarily render them inadmissible. This Court has stated that if time is not an element of the charged offense, the prosecution is not required to prove the date and time of the offense. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). The prosecution is required to submit a felony information, and the information must "contain the 'time of the offense as near as may be,' " but the prosecution need not present a specific and accurate date unless time is an element of the offense at issue. *Id*. at 82-83. As the prosecution correctly notes on appeal, because time is not an element of aggravated stalking, MCL 750.411i(2)(c), the mere fact that there are not dates on the text messages and voicemail recordings that match the amended felony information does not render the evidence inadmissible. Nevertheless, the prosecution predicated the charge against defendant on behavior alleged to have occurred during a specific range of dates, and thus, their general time frame was relevant.

Defendant's contention that the trial court erred in admitting the voicemail recordings and text messages challenges the trial court's determination that the evidence was authentic, i.e., that it was what the proponent of the evidence purported it to be, namely, voicemail recordings and text messages sent by defendant to the victim during the relevant period. See MRE 901(a). To authenticate evidence pursuant to MRE 901(a), the proponent of the evidence must "make a prima facie showing that a reasonable juror might conclude that the proffered evidence is what the proponent claims it to be." *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 155; 908 NW2d 319 (2017); citing *People v Mitchell*, 37 Mich App 351, 355-356; 194 NW2d 514 (1971). The trial court must admit the evidence if the proponent of the evidence makes the proper prima facie showing; the court cannot deny admission based on evidence proffered by the opponent to challenge the genuineness or relevance of the evidence. *Mitchell*, 321 Mich App at 155. In other words, the evidence supporting authentication "need not be free from all doubt." *Id*.; see *People v Burrell*, 21 Mich App 451, 456-457; 175 NW2d 513 (1970) (stating that authentication evidence "is not required to be positive, certain, or wholly unqualified") (quotation marks and citation omitted). Conflicting evidence as to authenticity or genuineness goes to the weight of the evidence, not its admissibility, and is a matter for the jury. *Id*. at 155-156; see *Burrell*, 21 Mich App at 457.

The requirements of MRE 901(a) may be met where a witness with knowledge testifies "that a matter is what it claim[s] to be." MRE 901(b)(1). In the case at bar, the victim testified that she recognized the voice on the voicemail recordings as that of defendant and that she received the recordings after June 5, 2017. See MRE 901(b)(5). As to the text messages, the prosecutor presented the victim with a number of messages, from which she selected the five messages admitted into evidence, identifying them as messages she received in June and July

2017. Thus, through the testimony of a witness with knowledge, the prosecution made a prima facie showing that the evidence in dispute was voicemail recordings and text messages sent by the defendant during the relevant period. Accordingly, the trial court was required to admit the evidence, and conflicting evidence as to the actual authenticity or genuineness of the evidence, such as the absence of dates, went to the weight of the evidence, not its admissibility. *Mitchell*, 321 Mich App at 155-156. The weight or reliability given to the evidence was a matter for the jury to determine, *id*. at 156, as was the credibility of the victim's testimony about the evidence, *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

On appeal, defendant does not deny that he sent the voicemail recordings and text messages to the victim. In fact, he argues that the text messages are similar to "alleged text messages" sent to the victim on August 20, 2017. In support of his argument, defendant attached to his appellate brief copies of the text messages admitted at trial, along with a series of *undated* photographs of a cellular telephone screen showing the text messages that he contends on appeal were sent on August 20, 2017. However, the photographs of the cellular telephone screen are not part of the lower court record, and defendant "may not now expand the record on appeal." *Nix*, 301 Mich App at 203. Moreover, defendant is essentially asking this Court to replace the jury's assessment of the victim's credibility with its own. This we decline to do. See *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008) ("This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses.")

In an effort to attack the admissibility of the above-discussed evidence from a different angle, defendant also argues that the prosecution committed prosecutorial misconduct by seeking to admit the text messages into evidence. To preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant did neither. In order to avoid forfeiture of an unpreserved claim, the defendant must demonstrate plain error that affected his substantial rights. *Carines*, 460 Mich at 763.

Defendant couches his argument in language suggesting that the prosecution may have engaged in unfair trial tactics by seeking to admit the text messages into evidence. The sole basis of his argument is his assertion that the text messages admitted are "rather similar" to the screen shots of the texts with which he attempts to expand the record on appeal and which he asserts were sent to the victim on August 20, 2017. We find defendant's allegation of prosecutorial misconduct wholly without merit.

A prosecutor's good-faith effort to admit evidence does not constitute misconduct. *Dobek*, 274 Mich App at 70. As we indicated above, the prosecutor made the necessary prima facie showing as to authenticity of the evidence and the trial court properly admitted the evidence. Any conflicting evidence as to the actual authenticity of the texts went to the weight of the evidence, not its admissibility. *Mitchell*, 321 Mich App at 155-156. Moreover, the trial transcript shows that *the victim* identified the messages she received during the relevant period, not the prosecutor. As we stated above, the credibility of the victim's testimony regarding the messages was for the jury to determine. *Lemmon*, 456 Mich at 637. Defendant has pointed to no place in the record where the prosecutor made improper remarks, see *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002), or made statements of fact unsupported by the record, see *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994). Nor has he argued that the

prosecutor knowingly used false testimony to obtain his conviction. See *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). In short, defendant has simply failed to present any actual evidence that the prosecutor's actions deprived him of a fair and impartial trial. See *Dobek*, 274 Mich App at 63 ("[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial.")

IV. DOCKET NO. 344509

In Docket No. 344509, defendant argues that insufficient evidence was presented to support a conviction of aggravated stalking in violation of MCL 750.411i(2)(a). This Court reviews a challenge to the sufficiency of the evidence in a jury trial de novo. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). The evidence is viewed "in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Id*. "Evidence is sufficient if, when viewed in the light most favorable to the prosecution, 'a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.' " *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (citation omitted). Direct and circumstantial evidence, including reasonable inferences arising from the use of circumstantial evidence, may provide sufficient proof to meet the elements of a crime. *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014).

"Aggravated stalking consists of the crime of 'stalking,' MCL 750.411h(1)(d), and the presence of an aggravating circumstance specified in MCL 750.411i(2)." *People v Threatt*, 254 Mich App 504, 505; 657 NW2d 819 (2002). "Stalking" means "a willful course of conduct involving repeated or continuous harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411i(1)(e). "Harassment" is "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411i(1)(d). "Emotional distress" is "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." MCL 750.411i(1)(d). MCL 750.411i(2)(a) provides that an individual who engages in stalking is guilty of aggravated stalking if "[a]t least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining order or at least 1 of the actions is in violation of an injunction or preliminary injunction."

Defendant first contends that the prosecution failed to present evidence that would cause the victim to feel "terrorized, frightened, intimidated, threatened, harassed, or molested" within the meaning of MCL 750.411i(1)(e). We disagree.

In certain circumstances, repeated contact with a victim can give rise to a rebuttable presumption that the conduct led the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested. As stated in MCL 750.411i(5),

evidence that the defendant continued to engage in a course of conduct involving repeated unconsented contact with the victim after having been requested by the victim to discontinue the same or a different form of unconsented contact, and to refrain from any further unconsented contact with the victim, gives rise to a rebuttable presumption that the continuation of the course of conduct caused the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

The record in the present case indicates that the victim called the police at least twice because of defendant's conduct, and she obtained a PPO against him. Defendant continued to contact the victim on the telephone and in person after the PPO was entered and served on him. On one occasion, sometime after August 17, 2017, the victim had to drive past her own house in order to avoid interacting with defendant, who was sitting on her porch uninvited. On a later occasion, defendant arrived at the victim's house uninvited, while the victim was there, and got into an argument with the victim's brother before being asked to leave. By engaging in continued contact with the victim after she obtained a PPO against him, defendant triggered the rebuttable presumption set forth in MCL 750.411i(5). A jury could infer that a reasonable person who repeatedly asked an individual to stop contacting her and put in the effort to obtain a PPO would feel terrorized, frightened, intimidated, threatened, harassed, or molested if said individual continued to contact her in violation of the PPO. Defendant's unconsented contact with the victim after the PPO was entered gives rise to the rebuttable presumption that the repeated contact caused the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and defendant did not present any evidence to rebut the presumption. *Gaines*, 306 Mich App at 296. Viewing the record evidence in the light most favorable to the prosecution, *Gaines*, 306 Mich App at 296, we conclude that the prosecution presented sufficient evidence from which the trier of fact could have found beyond a reasonable doubt that the victim felt terrorized, frightened, intimidated, threatened, harassed, or molested.

Defendant next argues that insufficient evidence was presented to support his conviction of aggravated stalking under MCL 750.411i(2)(a) because the prosecution did not provide evidence to show that defendant had actual notice of the PPO. Again, we disagree.

At trial, Corporal White testified to the steps he took to serve defendant with a copy of the PPO on August 10, 2017. After going to defendant's place of employment, a car wash, and not finding him there, the officer called a telephone number that was associated with defendant. Corporal White confirmed defendant's identity over the telephone, testifying as follows:

> *Prosecutor.* Did the person identify themselves, at some point?
>
> *Corporal White.* Correct, he did.
>
> *Prosecutor.* What name did they give you?
>
> *Corporal White.* He gave me Timothy Jones.

Corporal White testified that he then explained to defendant that he wanted to provide him with a copy of the PPO. He informed defendant of the specific restrictions imposed by the PPO and asked if there was a way to ensure that defendant received the PPO paperwork.

Defendant told Corporal White to leave the paperwork at the car wash, and Corporal White did so. The victim also testified that defendant called her on the telephone after discovering that she filed a PPO, stating that defendant "called me and told me that the sheriff tried to serve him, but he told the sheriff to leave [the PPO] at his job."

Defendant contends that he did not receive actual notice of the PPO because Corporal White had no evidence of what defendant looked like or sounded like over the phone, and he could not confirm that the copy of the PPO that he left at the car wash was actually received by defendant. Defendant's argument erroneously conflates "personal service" with "actual notice." This Court has previously declined to construe "actual notice" as the equivalent of "personal service" for purposes of MCL 750.411i(2)(a). *Threatt*, 254 Mich App at 507. Accordingly, the prosecution did not have to prove that defendant was personally served with a copy of the PPO to prove actual notice; rather, the prosecution was merely required to proffer evidence that defendant had knowledge of the PPO.[5] *Id*. at 506-507. Here, Corporal White's testimony regarding oral service of the PPO, and the victim's corroborating testimony, viewed in the light most favorable to the prosecution, was sufficient to enable the jury to conclude beyond a reasonable doubt that defendant had actual notice of the PPO.

Affirmed.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Michael J. Kelly

---

[5] Defendant argues that actual notice by way of a "mere phone call" is unfair and violates his Due Process rights, but he fails to explain why or cite any supporting authority, thereby abandoning the argument.