*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARCO FRANKLIN CASTILLO,

Defendant-Appellant.

UNPUBLISHED
May 18, 2023

No. 360753
Huron Circuit Court
LC No. 2020-306549-FH

Before: LETICA, P.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction and sentence for assault with intent to do great bodily harm less than murder, MCL 750.84. The trial court sentenced defendant, as a second-offense habitual offender, MCL 769.10, to 18 months to 15 years' imprisonment. On appeal, defendant contends that the trial court erred by (1) improperly admitting certain evidence, (2) improperly instructing the jury, and (3) improperly scoring offense variable (OV) 7 during sentencing. Defendant also claims numerous instances of ineffective assistance by his trial counsel. We affirm.

## I. BACKGROUND

Defendant's conviction and sentence arise from a fight between he and Michael Bucholtz on April 28, 2020, at Bucholtz's home. Each claimed self-defense and asserted that the other started the fight. At the time, Bucholtz was allowing defendant to stay in a bedroom of his home. Defendant moved in with Bucholtz sometime in the weeks before the April 2020 fight. However, their relationship soon soured, with the issues between them ultimately culminating in the fight. Both defendant and Bucholtz admitted that, during this incident, each attacked the other with a blunt object, with defendant using a baseball bat and Bucholtz using a metal pipe and chain. Bucholtz was hospitalized and suffered significant injuries from the fight.

The jury initially was unable to reach a unanimous verdict but, after the court gave a deadlock jury instruction, it deliberated further and found defendant guilty of assault with intent to do great bodily harm less than murder. The trial court sentenced defendant as described earlier.

-1-

As relevant here, the trial court assessed defendant 50 points under OV 7 for aggravated physical abuse. This appeal followed.

## II. ANALYSIS

### A. ADMISSION OF EVIDENCE

Defendant argues that the trial court erred by admitting (1) the photographs of Bucholtz's home taken by Marna Adamets, Bucholtz's girlfriend, well after the fight took place, and (2) a damaged ceiling light fixture collected from the home over a year later. We disagree.

Ordinarily, "[t]he decision whether to admit evidence is within the trial court's discretion, which will be reversed only where there is an abuse of discretion." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted). However, because defendant did not object at trial to admission of the evidence he now challenges on appeal, this issue is unpreserved for review. See *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Unpreserved evidentiary issues are reviewed for plain error affecting substantial rights. *Id*. at 252. To establish entitlement to relief under plain-error review,

> three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. . . . Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings[] independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks and citations omitted).]

According to defendant, the evidence at issue was unreliable and, therefore, unduly prejudicial and inadmissible under MRE 403. Defendant claims that the photographs were unreliable because they were not taken by police while investigating the scene, but instead Adamets took the photos after the police left Bucholtz's home. Defendant argues that there "was no indicia of reliability that Adamets did not move things, change things, remove things or in any other way alter the scene of the altercation before taking her photographs," and that the pictures were "overwhelming prejudicial" because Adamets had a clear motive to present the scene favorably for Bucholtz. Defendant argues that the light fixture was similarly unreliable because it was collected by police over a year after the April 2020 fight and anything, including new or additional damage, could have happened to the light fixture during this intervening period.

Defendant concedes that the photographs and light fixture may have been relevant under MRE 401. However, defendant claims that "the manner in which they were obtained by law enforcement through a third party with motive to skew the facts in favor of [Bucholtz] put their reliability and authenticity into question." Defendant, given these alleged evidentiary defects and because his and Bucholtz's credibility were key to this case, asserts that the jury likely gave undue

or preemptive weight to this evidence. Defendant argues, therefore, that the trial court plainly erred by improperly admitting this evidence, which cast him in an extremely negative light and suggested to the jury that he was a violent person.

> In Michigan, challenges to the authenticity of evidence involve two related, but distinct, questions. The first question is whether the evidence has been authenticated—whether there is sufficient reason to believe that the evidence is what its proponent claims for purposes of admission into evidence. The second question is whether the evidence is actually authentic or genuine—whether the evidence is, in fact, what its proponent claims for purposes of evidentiary weight and reliability. [*Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 154; 908 NW2d 319 (2017) (emphasis omitted).]

"The first question is reserved solely for the trial judge. In the role as evidentiary gatekeeper, the trial judge must make the initial determination of whether the evidence is admissible—a question that depends, among other things, on whether the evidence can be authenticated." *Id*. at 154-155. To authenticate evidence, its proponent must only offer "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id*. at 155 (quotation marks and citation omitted). See also MRE 901(a). "[E]vidence supporting authentication may be direct or circumstantial and need not be free of all doubt." *Mitchell*, 321 Mich App at 155.

"Once the proponent of the evidence has made th[is] prima facie showing, the evidence is authenticated under MRE 901(a) and may be submitted to the jury." *Id*.

> [T]he second question—the weight or reliability (if any) given to the evidence—is reserved solely to the fact-finder . . . . When a bona fide dispute regarding the genuineness of evidence is presented, that issue is for the jury, not the trial court. Accordingly, the parties may submit evidence and argument, pro and con, to the jury regarding whether the authenticated evidence is, in fact, genuine and reliable. [*Id*. at 156.]

Relatedly, this Court has stated that for real evidence, like the light fixture at issue here, "an adequate foundation for admission requires testimony first that the object offered is the object which was involved in the incident, and further that the condition of the object is substantially unchanged." *People v Kemp*, 99 Mich App 485, 489; 298 NW2d 1 (1980) (quotation marks and citation omitted).[1] "A proper foundation for the admission of photographs is made if someone who is familiar from personal observation of the scene or person photographed testifies that the photograph is an accurate representation of the scene or person." *In re Robinson*, 180 Mich App 454, 460; 447 NW2d 765 (1989). "Photographs are admissible despite changes in the condition of the scene or person where a person testifies as to the extent of the changes." *Id*. at 460-461.

---

[1] Although this Court is not required to follow cases decided before November 1, 1990, see MCR 7.215(J)(1), a published case decided by this Court "has precedential effect under the rule of stare decisis," MCR 7.215(C)(2).

Furthermore, relevant evidence is generally admissible. See MRE 402; *People v Starr*, 457 Mich 490, 497; 577 NW2d 673 (1998). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. But, even if the evidence is relevant and otherwise admissible under MRE 401 and MRE 402, a trial court may exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403; see also *Feezel*, 486 Mich at 198.

> Assessing probative value against prejudicial effect requires a balancing of several factors, including the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. [*People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).]

"Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *Id*.

While defendant faults the trial court for admitting the photographs and the light fixture because the evidence was unreliable, the weight or reliability of evidence is an issue for the jury only after evidence has been admitted by the court. See *Mitchell*, 321 Mich App at 156. Further, we conclude that there was a proper foundation to admit this evidence. Specifically, Adamets testified extensively as to the photographs' accuracy. Although some of the pictures were taken an hour or so after the fight, some later in the evening, and some days later; Adamets was clear in describing the circumstances surrounding each image and any changes she had made to the scene since the fight occurred. And Bucholtz, Adamets, and Huron County Sheriff's Office Lieutenant Ryan Neuman all testified that the light fixture, despite being recovered by police well after the fight, was damaged during the fight and thereafter was substantially unchanged. Given the proper foundation for admission, whether this evidence was genuine and reliable, including whether the evidence accurately depicted the scene, was a question reserved for the jury.

Moreover, the challenged evidence was not unduly prejudicial under MRE 403. Reviewing the photographs and the testimony regarding the light fixture, we conclude that there was no danger that the evidence would be given undue or preemptive weight by the jury, that it would be inequitable to allow use of the evidence, or that there would be a danger that the evidence would stir the jurors to such passion so as to be swept beyond rational consideration of defendant's guilt or innocence. See *Blackston*, 481 Mich at 462. The photographs merely depict the scene of the fight after Bucholtz was hospitalized and the police left the home. While these images certainly show that the fight was violent, particularly given the blood spatter depicted, nothing indicates they were enhanced or otherwise altered to distort the nature of the incident and inflame the jury. See *People v Mills*, 450 Mich 61, 77; 537 NW2d 909 (1995) ("The photographs are accurate factual representations of the injuries suffered by [the victim] and the harm the defendants caused her. The photographs did not present an enhanced or altered representation of the injuries. Although the photographs are graphic, their probative value was not substantially outweighed by their

possible prejudice."). Similarly, nothing suggests that the light fixture was altered other than it was dismantled from the ceiling. Accordingly, the trial court did not err by admitting the photographs and the light fixture now challenged by defendant.

## B. JURY INSTRUCTION

Defendant argues that the trial court erred by not giving jurors the standard deadlock instruction. We disagree.

Ordinarily, issues of law arising from jury instructions are reviewed de novo on appeal, "[b]ut a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (quotation marks and citation omitted). Jury instructions are to be read as a whole rather than extracted piecemeal to establish error. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). Even if somewhat imperfect, instructions do not create error if they "fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012) (quotation marks and citation omitted). Because defendant did not object to the trial court's deadlock instruction until after the jury deliberated, we review this issue for plain error affecting substantial rights. See *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003).[2]

Defendant argues that the trial court's modified deadlock instruction was improper and coercive by requiring the jury to deliberate for an unreasonable amount of time contrary to *People v Hardin*, 421 Mich 296, 318-319; 365 NW2d 101 (1984). According to defendant, it was inappropriate for the trial court to determine that the jury's initial four-hour deliberation was insufficient and to indicate that jurors were expected to continue deliberations for an open-ended amount of time, possibly for days. Defendant further argues that the trial court improperly and substantially deviated from the standard deadlock instruction. Defendant also argues that the trial court's instructions were rambling, repetitive, and confusing to the jury. Lastly, defendant argues that this error was obvious, and that he was prejudiced by the improper instruction. Defendant notes that the jury was unable to reach a verdict after substantial deliberations, asserting that the jury only found him guilty because it likely was coerced by the trial court's instruction.

In *People v Walker*, 504 Mich 267; 934 NW2d 727 (2019), our Supreme Court recently summarized the requirements of a deadlock instruction—commonly called an *Allen*[3] charge—as follows:

---

[2] We disagree with the prosecution that defendant waived this issue. A defendant waives a claim of instructional error by expressly approving the instruction on the record. See *Kowalski*, 489 Mich at 504 ("[B]y expressly and repeatedly approving the jury instructions on the record, defendant waived any objection to the erroneous instructions, and there is no error to review."). While defendant did not object to the trial court's deadlock instruction before the jury continued deliberations, he never expressed any explicit approval of the instruction.

[3] *Allen v United States*, 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896).

The goal of such an instruction is to encourage further deliberation without coercing a verdict. If the charge has the effect of forcing a juror to surrender an honest conviction, it is coercive and constitutes reversible error.

This Court adopted a standard deadlocked-jury instruction that has since been incorporated into our model jury instructions. Although the model instruction is an example of an instruction that strikes the correct balance, it is not the only instruction that may properly be given. The relevant question is whether the instruction given could cause a juror to abandon his or her conscientious dissent and defer to the majority solely for the sake of reaching agreement. The inquiry must consider the factual context in which the instruction was given and is conducted on a case-by-case basis. [*Id*. at 277-278 (cleaned up).]

The standard instruction for a deadlocked jury states:

(1) You have returned from deliberations, indicating that you believe you cannot reach a verdict. I am going to ask you to please return to the jury room and resume your deliberations in the hope that after further discussion you will be able to reach a verdict. As you deliberate, please keep in mind the guidelines I gave you earlier.

(2) Remember, it is your duty to consult with your fellow jurors and try to reach agreement, if you can do so without violating your own judgment. To return a verdict, you must all agree, and the verdict must represent the judgment of each of you.

(3) As you deliberate, you should carefully and seriously consider the views of your fellow jurors. Talk things over in a spirit of fairness and frankness.

(4) Naturally, there will be differences of opinion. You should each not only express your opinion but also give the facts and the reasons on which you base it. By reasoning the matter out, jurors can often reach agreement.

(5) If you think it would be helpful, you may submit to the bailiff a written list of the issues that are dividing or confusing you. It will then be submitted to me. I will attempt to clarify or amplify the instructions in order to assist you in your further deliberations.

(6) When you continue your deliberations, do not hesitate to rethink your own views and change your opinion if you decide it was wrong.

(7) However, none of you should give up your honest beliefs about the weight or effect of the evidence only because of what your fellow jurors think or only for the sake of reaching agreement. [M Crim JI 3.12.]

Here, the trial court's instruction essentially was verbatim to the standard deadlock jury instruction, with the court explicitly referencing all seven prongs of the standard instruction. However, the trial court added information not in the standard deadlock instruction by commenting

on the jurors' previous time and effort on the case and noting, "I feel that maybe after some further thinking—and you get an opportunity to sleep on it, too. That may help as well."

The trial court's additional commentary to the instruction did not improperly coerce the jury. There was no force or threat that jurors deliberate for an unreasonable amount of time or other improper coercion. Defendant largely relies on the trial court's statement that jurors would "get" to sleep on their views. However, given that the jury had adjourned from the day before and had not yet begun its second day of deliberations, the trial court was commenting upon the jurors' previous efforts in the case. Therefore, it appears the trial court was referring to the fact that the jurors "got" to sleep on their views, and the word "get" either was a spoken or stenographic error. There is nothing else in the record beyond the single word "get" to suggest that the trial court informed the jury that it would require yet another day of deliberations.

Furthermore, defendant's reliance on *Hardin*, 421 Mich 296, is misplaced. While *Hardin* provides that "[t]he court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals," *id*. at 318-319 (quotation marks and citation omitted), the Court held that no such error occurred with similar instructions to that here, *id*. at 319-320. Specifically, the trial court in *Hardin* generally stated to jurors that it felt they needed to deliberate further, and later told jurors that they may be able to reach a verdict after a night's sleep. *Id*. at 319. According to our Supreme Court, "Although there was what could perhaps be characterized as a plea to try to reach a verdict, there was no statement to the effect that the jury must reach a verdict, or to the effect that the failure to reach a verdict constituted a violation of the jurors' civic duty, or that they would be required to deliberate until they reached a verdict." *Id*. at 319-320 (quotation marks and citations omitted).

Here, similarly, while the trial court's additional commentary could be viewed as a plea for the jury to reach a verdict, nothing indicated that the jury was required to do so or that deliberations would continue until a verdict was reached. The trial court's additional commentary, including the isolated statement about jurors sleeping on the matter, does not contradict or otherwise overshadow its earlier clear and near-verbatim recitation of the standard deadlock instruction. Even if the trial court indicated that deliberations could continue another day or longer with the sleep-on-it reference, this isolated statement, given the court's prior detailed recitation of the standard deadlock instruction, did not pressure jurors to abandon their conscientious dissent and defer to the majority solely for the sake of reaching agreement. Nothing in the record shows coercion to force jurors to surrender their honest convictions.

We conclude, therefore, that the trial court's instruction was not improperly coercive. Rather, the trial court's instruction fairly presented the issues to be tried and sufficiently protected the defendant's rights. *Eisen*, 296 Mich App at 330. The trial court's deadlock instruction was not erroneous.

## C. OV 7 SCORING

Defendant argues that the trial court erred by assessing him 50 points under OV 7, which he claims should have been assessed at 0 points. We disagree.

"When reviewing a trial court's guidelines scoring decisions, the trial court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Lydic*, 335 Mich App 486, 490; 967 NW2d 847 (2021) (quotation marks and citation omitted). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* (quotation marks and citation omitted). "Offense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *Id.* at 491 (quotation marks and citation omitted). However, because defendant never raised this issue at sentencing, in a motion for resentencing, or in a motion to remand filed in this Court, we review this issue for plain error affecting substantial rights. See *People v Loper*, 299 Mich App 451, 456-457; 830 NW2d 836 (2013).

OV 7, which concerns aggravated physical abuse, provides that 50 points should be assessed when

> [a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense. [MCL 777.37(1)(a).]

A sentencing court applying OV 7 must conduct the following analysis:

> If the case involves conduct consisting of one or more of the categories of sadism, torture, or excessive brutality, then OV 7 applies. If the case does not involve one or more of the categories of sadism, torture, or excessive brutality, then the sentencing court must determine whether the case involves "similarly egregious conduct" to at least one of those categories. If it does, the court also must determine whether the conduct substantially increased a victim's fear and anxiety. If all those factors are met, then OV 7 applies for purposes of the fourth category of conduct. [*Lydic*, 335 Mich App at 496-497 (footnotes omitted).]

Furthermore, each category of aggravated physical abuse requires conduct beyond the minimum required to commit a particular offense. See *People v Hardy*, 494 Mich 430, 443; 835 NW2d 340 (2013) ("[A]ll relevant evidence should be closely examined to determine whether the defendant engaged in conduct beyond the minimum necessary to commit the crime, and whether it is more probable than not that such conduct was intended to make the victim's fear or anxiety increase by a considerable amount."). "The elements of assault with intent to do great bodily harm less than murder are (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (cleaned up).

According to defendant, his actions were not aggravated in any way to allow the trial court's assessment of 50 points under OV 7. Defendant emphasizes that, while he injured Bucholtz, he never intended to inflict any abuse or suffering, and he immediately admitted his actions to police in claiming self-defense. He also notes he immediately asked Michael Jerrell,

another person living in Bucholtz's home, to call 911 and Jerrell's statement to the dispatcher that Bucholtz hit defendant first. Defendant claims that, because (1) he did not engage in any prolonged assault and (2) there was no evidence that he intended to increase Bucholtz's fear or anxiety, his actions did not constitute excessive brutality. Defendant also faults the trial court for failing to place any justification on the record for its scoring of OV 7. In sum, defendant claims that there was insufficient evidence that he intended to be sadistic, tortuous, or excessively brutal, and that he should have been assessed 0 points under OV 7.

We conclude that the trial court properly scored OV 7. First, as recently clarified by this Court and contrary to defendant's argument, only the fourth category under OV 7 requires an intent to substantially increase a victim's fear or anxiety. *Lydic*, 335 Mich App at 496-497. More importantly, the evidence here was sufficient for the trial court to conclude that defendant committed excessive brutality beyond the minimum required to commit the offense. Specifically, defendant's conviction did not require the use of a weapon or multiple blows to Bucholtz, facts uncontested by defendant here. See *id*. at 498-499 ("Defendant's actions, as found by the trial court, certainly involved excessive violence beyond the minimum required to commit the offense of assault by strangulation. Assault by strangulation does not require the use of a weapon, and by using a belt, defendant increased the physical severity of the offense. The use of the belt thus satisfies the requirement of excessive brutality, and OV 7 applies.") (citation and footnote omitted). The brutality of defendant's conduct was further established by the significant injuries Bucholtz suffered from the fight, most notably the four fractures to various parts of his head and the two broken ribs. In addition to the particularly violent assault, the record also shows that defendant was making disturbing threats against Bucholtz shortly before the fight, with Jerrell stating that defendant continued directing threats and vulgarity toward Bucholtz even as he was incapacitated on the kitchen floor.

Under these circumstances, the trial court did not err in scoring OV 7. While the trial court admittedly did not place any explicit reasoning concerning OV 7 on the record, the evidence nevertheless supports assessing defendant 50 points under this variable, specifically under the excessive-brutality prong. Because there was no error concerning OV 7, the trial court properly calculated defendant's minimum sentencing guidelines range, and he is not entitled to resentencing.

## D. INEFFECTIVE ASSISTANCE

Defendant raises numerous claims of ineffective assistance regarding trial counsel's performance. We disagree with each claim.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020) (quotation marks and citation omitted). "Findings of fact are reviewed for clear error, while constitutional determinations are reviewed de novo." *Id*. (quotation marks and citation omitted). "A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *Id*. at 227-228 (quotation marks and citation omitted). However, defendant

never preserved his claims of ineffective assistance by moving for a new trial or for a *Ginther*[4] hearing. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). This Court reviews unpreserved claims of ineffective assistance of counsel for errors apparent from the record. *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011).

A defendant claiming ineffective assistance of counsel must establish (1) that counsel's performance was defective and (2) prejudice:

> In order to establish the right to a new trial premised on ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*Abcumby-Blair*, 335 Mich App at 228.]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted). "There is a presumption that counsel was effective, and a defendant must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *People v Cooper*, 309 Mich App 74, 80; 876 NW2d 452 (2015). "The defendant bears the burden of demonstrating both deficient performance and prejudice; the defendant also necessarily bears the burden of establishing the factual predicate for his claim." *Id*. (cleaned up).

Defendant argues that trial counsel's performance was deficient by (1) failing to contest admission of Adamets's photographs and the light fixture, (2) failing to timely object to the trial court's deadlock instruction before the jury continued deliberating, and (3) failing to object to the scoring of OV 7.

As discussed, none of defendant's alleged underlying errors have merit. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Accordingly, these claims of ineffective assistance must fail. We acknowledge that failure to establish plain error affecting substantial rights does not necessarily preclude a claim of ineffective assistance regarding counsel's performance concerning the underlying error. *People v Randolph*, 502 Mich 1, 22; 917 NW2d 249 (2018). Nevertheless, because we earlier concluded that there was no error at all, let alone plain error, regarding these underlying issues, trial counsel was not ineffective in forgoing meritless arguments and objections.

Furthermore, defendant in his Standard 4 brief argues that trial counsel was additionally ineffective by (1) failing to further question the prosecution's medical expert regarding Bucholtz's head, ankle, and facial injuries; (2) otherwise failing to bring these facts to the jury's attention; (3) failing to mention and make the jury aware of defendant's hospital visit following the fight; and

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

(4) failing to provide defendant's medical records as evidence.[5]  Decisions as to what evidence to present, *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004), how to question a witness, *id*., and what evidence to focus on in a closing statement, *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008), are presumed to be matters of trial strategy.  Here, defendant provides no argument whatsoever that these actions constituted deficient performance, that he was prejudiced by the conduct, or to overcome the burden that counsel's actions were sound trial strategy.  Instead, he conclusively asserts that trial counsel "was ineffective" given the described conduct.

But trial counsel did question an emergency room physician who treated Bucholtz after the fight regarding his injuries, including explicitly questioning the physician on whether Bucholtz's head injuries could have been caused by hitting the table or a corner of the wall during the fight; trial counsel also questioned the physician to clarify for the record that Bucholtz's ankle injury was likely from a fall and/or twisted ankle.  Trial counsel also elicited testimony from defendant concerning the injuries he suffered from the fight.

No error is apparent from our review of the record concerning trial counsel's approach to these matters.  For these reasons, these claims of ineffective assistance must also fail.

### III.  CONCLUSION

There were no errors warranting relief.  We affirm.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michael J. Riordan

---

[5] The Standard 4 brief, despite seemingly raising an issue in the statement of questions presented concerning the admissibility of the medical expert's testimony, lacks any actual argument on this issue.  Accordingly, there is nothing to analyze for this stated issue.  See *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) ("[A] mere statement without authority is insufficient to bring an issue before this Court.  It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims . . . .") (quotation marks and citation omitted).

-11-