# STATE OF MICHIGAN

# COURT OF APPEALS

ROLLA MITCHELL,

Plaintiff-Appellant,

v

KALAMAZOO ANESTHESIOLOGY, PC and
BERNARD MASON SMITH III, M.D.,

Defendants-Appellees.

FOR PUBLICATION
August 24, 2017
9:05 a.m.

No. 331959
Kalamazoo Circuit Court
LC No. 2013-000500-NH

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

SWARTZLE, J.

In this medical-malpractice suit, plaintiff Rolla Mitchell sued defendant Bernard Mason Smith III, M.D., and the doctor's former employer, defendant Kalamazoo Anesthesiology, PC. Plaintiff claimed that Dr. Smith negligently performed certain post-operative services that permanently injured the phrenic nerve in plaintiff's shoulder. The jury returned a verdict in favor of defendants, and plaintiff appealed.

One key issue at trial was whether an ultrasound image sought to be introduced by the defense was, in fact, an accurate scan of the ultrasound image taken of plaintiff's shoulder on the day of surgery. The image purported to show that Dr. Smith properly placed the needle and catheter while performing the post-operative services on plaintiff. Outside the presence of the jury, the trial judge held that defendants had properly authenticated the image and, as a result, plaintiff's counsel was precluded from presenting evidence or argument to the jury that the proffered image was not, in fact, an accurate image of plaintiff's shoulder.

As explained below, we conclude that the trial court properly served its gatekeeping role by admitting the ultrasound image as authentic under Michigan Rule of Evidence 901. Yet, authentication under MRE 901 is a threshold matter that goes to the admissibility of evidence, not the ultimate weight to be given that evidence. By precluding plaintiff's counsel from attacking the genuineness and reliability of the ultrasound image before the jury, the trial judge overstepped his gatekeeping role and, instead, intruded on the jury's role as fact-finder. Given the importance of the ultrasound image to this dispute, we reverse and vacate the judgment and remand for further proceedings.

# I. BACKGROUND

## A.     Plaintiff's Shoulder Surgery and Post-Operative Complications

In May 2011, plaintiff had surgery on his right shoulder at Borgess Medical Center in Kalamazoo, Michigan. Defendant Kalamazoo Anesthesiology provided anesthesiology services for Borgess under contract. Both Dr. Phyllis Lashley and Dr. Smith worked for Kalamazoo Anesthesiology. Dr. Lashley provided anesthesiology services to plaintiff during his surgery, and defendant Dr. Smith provided post-operative services, including performing an "interscalene nerve block and continuous catheter placement" on plaintiff's shoulder. In October 2013, plaintiff sued defendants for malpractice, alleging, among other things, that Kalamazoo Anesthesiology failed to obtain plaintiff's informed consent and Dr. Smith negligently conducted the procedure. The case proceeded to trial over several days in February 2016.

At trial, Dr. Lashley testified that she did not "specifically remember" interacting with plaintiff before or during his surgery, but records showed that she signed his anesthesia pre-evaluation form, and a notation on the form indicated that she discussed the use of an interscalene block with him to manage his pain after the surgery. At trial, Dr. Brian Kiessling explained that an interscalene block was a procedure where the physician uses a needle to administer a local anesthetic around the brachial plexus, which provides anesthesia to the patient for varying periods of time.

Dr. Smith testified that he performed the interscalene block and catheter placement on plaintiff after the shoulder surgery. Dr. Smith then attached a pain pump to the catheter to help plaintiff manage his pain. Dr. Smith stated that part of his training included being careful not to puncture the phrenic nerve during the interscalene block. He noted that plaintiff was talking throughout the procedure and that there was no indication that plaintiff had suffered a phrenic nerve injury at that time.

Later that day, plaintiff had problems breathing, a common symptom of phrenic nerve injury. He returned to the hospital and sought follow-up medical advice and treatment. Physicians who subsequently treated plaintiff testified that his phrenic nerve was dysfunctional, that it was the cause of his shortness of breath, and that his condition was not likely to improve.

## B.     The Ultrasound Image

One crucial factual dispute at trial was whether Dr. Smith properly performed the interscalene block on plaintiff after the shoulder surgery. Plaintiff argued that Dr. Smith breached the standard of care by placing the needle or catheter in such a way as to directly damage his phrenic nerve. Dr. Smith, by contrast, argued that he properly placed the needle and catheter in the interscalene groove near the brachial plexus and that plaintiff was just one of the unfortunate patients—1 in 1,000 or 2,000, in Dr. Smith's estimation—who develop permanent phrenic nerve injury, even with a properly performed interscalene block.

The medical records indicated that Dr. Smith used an ultrasound to guide his placement of the needle and catheter during the procedure, and Dr. Smith noted on plaintiff's chart that he

printed an image from the scan at the time he performed the procedure. During his deposition, Dr. Smith testified that he did not know what happened to the image after he put it with plaintiff's chart on the day of the procedure. Plaintiff repeatedly asked for the ultrasound image during discovery, but it was not until just before case evaluation that defendants produced what they purported to be a scanned version of the original progress note with an ultrasound image attached to it.

Plaintiff's counsel questioned the authenticity of the ultrasound depicted in the image. Among other things, the image showed that the sticker with plaintiff's identifying information on it had been placed over another sticker that attached the ultrasound image to the progress note, and that the sticker was different from others used on the day of plaintiff's procedure. Counsel also noted that the time listed on the ultrasound by a time-stamp (4:16:27) varied from the time of the procedure listed on plaintiff's chart (15:32), suggesting that the ultrasound image was taken 45 minutes *after* the notes indicated that plaintiff had his procedure.

Defendants moved in limine to prevent plaintiff from presenting evidence to the jury about the delay in the disclosure of the digital image and to preclude plaintiff from arguing to the jury that defendants' version might not be a true image of the ultrasound taken during the procedure. On the first day of trial, the trial court held an evidentiary hearing outside the presence of the jury to consider the motion, as well as the predicate question of whether the evidence should be authenticated.

At the hearing, Michelle Ritsema testified that she was the Document Imaging Supervisor for Borgess Medical Center. She stated that the center had discovered a digital scan of what it claimed was the original progress note with the ultrasound printout attached to it. The center produced the digital version because the original had apparently been destroyed along with the rest of the physical record per the center's normal record-retention policy. She testified that the digital version had been found in the center's medical records and human error caused the delay in its disclosure. Regarding the various stickers appearing on the image, Ritsema agreed that the sticker on the progress note was the only thing that connected the image to plaintiff, and she admitted that she did not know who placed the sticker or when it was placed. Ritsema testified that it was normal for a document to have multiple stickers. She also testified, however, that the center does not place stickers on the records, so the sticker in question must have been placed by an employee in the outpatient short-stay department. According to Ritsema, only the first document in a chart would normally have a barcode on it and, therefore, the progress note and attached ultrasound would normally not have a barcode label originating from the center. Ritsema explained, however, that the outpatient short-stay floors print their own labels with barcodes to place on the medical records. Overall, Ritsema did not see anything unusual with the sticker having a barcode.

Concerning the time-stamp indicating a different time than when plaintiff's procedure took place, Ritsema testified that she did not have any doubt that the time-stamp reflected the actual time the image was printed. Ritsema noted that the difference between the time-stamp and the time of plaintiff's procedure could have resulted from some kind of incongruence between the system's time and daylight savings time. (It should be noted, however, that the difference is not a whole-number of the hour, but rather approximately 45 minutes, suggesting that confusion created by daylight savings time was not the complete answer.)

After taking Ritsema's testimony, defendants argued that allowing plaintiff to present evidence that the ultrasound image was not produced when first requested would cause "confusion, prejudice and false impressions being made to the jury." Moreover, defendants argued that plaintiff should be prohibited from arguing that the image did not depict or pertain to plaintiff. Because there was no evidence that something "nefarious" or "dishonest" occurred with the ultrasound image, defendants argued that any argument to that effect would be a matter of "innuendo and supposition" and would unfairly prejudice the defense. Plaintiff responded that the image was "tainted" by the offending sticker and apparent time disparity, and the image should be excluded from evidence or, if the image was admitted, he should be allowed to attack the image's genuineness and reliability at trial.

The trial court determined that, although there appeared to be some "irregularities with respect to this photograph," there was no evidence that defendants improperly destroyed the original or had any role in the failure to disclose it. The trial court found the evidence sufficiently authenticated to be admissible. Moving to whether the probative value of the image was substantially outweighed by any undue prejudice under MRE 403, the trial judge stated that any irregularities in its production and the chain-of-custody did not outweigh the probative value. (The trial judge did not, however, explicitly consider the probative value of plaintiff's evidence calling into question the genuineness and reliability of the image.) The trial court concluded that it would invite a "trial within a trial" involving a nonparty (the center) to allow plaintiff to argue that defendants did something wrong in the handling of the image or that the image was not accurate. Thus, the trial judge precluded plaintiff from offering any evidence tending to show that the image was not an accurate one: "Nor am I going to allow testimony that this particular photograph does not belong or otherwise depict the plaintiff's procedure."

During trial, the ultrasound image was a key piece of defendants' case. A defense expert testified that the image represented a "textbook" example for the proper placement of the needle during an interscalene block. And plaintiff's own expert had to concede that the image depicted a proper needle placement. Plaintiff's expert was left to speculate whether Dr. Smith might have improperly placed the needle and catheter before or after the ultrasound image was printed.

After receiving this and other evidence permitted at trial, the jury found that defendants were not negligent. The trial court entered a judgment of no cause of action in favor of defendants, and plaintiff appealed.

## II. ANALYSIS

### A. Evidentiary Rulings Reviewed for an Abuse of Discretion

On appeal, plaintiff argues that the trial judge erred in several respects with his evidentiary rulings and that those errors prejudiced the trial. We review a trial judge's evidentiary decisions for an abuse of discretion. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). A trial judge abuses the court's discretion when the judge selects an outcome that is outside the range of principled outcomes. *Id.* We review de novo whether the trial judge properly interpreted and applied the rules of evidence to the facts. *Donkers v Kovach*, 277 Mich App 366, 369; 745 NW2d 154 (2007).

B.      Authentication v. Evidentiary Weight of the Ultrasound Image

       1.      The Trial Judge Did Not Err in Authenticating the Ultrasound Image

Plaintiff first argues that the trial judge erred by allowing defendants to introduce the digital image. Plaintiff claims that defendants failed to present sufficient evidence to authenticate the image. He also argues that, to the extent that the trial judge did not abuse his discretion by allowing the image into evidence, the trial judge abused his discretion by preventing plaintiff from presenting evidence and arguing to the jury that the image was not what it purported to be.

In Michigan, challenges to the authenticity of evidence involve two related, but distinct, questions. The first question is whether the evidence has been *authenticated*—whether there is sufficient reason to believe that the evidence is what its proponent claims for purposes of admission into evidence. The second question is whether the evidence is *actually authentic* or *genuine*—whether the evidence is, in fact, what its proponent claims for purposes of evidentiary weight and reliability.

The first question is reserved solely for the trial judge. In the role as evidentiary gatekeeper, the trial judge must make the initial determination of whether the evidence is admissible—a question that depends, among other things, on whether the evidence can be authenticated. See *People v Mitchell*, 37 Mich App 351, 355; 194 NW2d 514 (1971). Under MRE 901(a), to authenticate a piece of evidence, the proponent of that evidence bears the burden of bringing forth evidence "sufficient to support a finding that the matter in question is what its proponent claims." Our evidentiary rules do not require the proponent to sustain this burden in any particular fashion. See MRE 901(b). Indeed, evidence supporting authentication may be direct or circumstantial and need not be free of all doubt. See *Champion v Champion*, 368 Mich 84, 87-88; 117 NW2d 107 (1962); *Livernash v DeLorme*, 208 Mich 295, 301; 175 NW 177 (1919); *People v Burrell*, 21 Mich App 451, 456-457; 175 NW2d 513 (1970).

Michigan courts have interpreted MRE 901(a) as requiring the proponent only to make a prima facie showing that a reasonable juror might conclude that the proffered evidence is what the proponent claims it to be. See *Mitchell*, 37 Mich App at 355-356. See also Gillespie, Michigan Criminal Law and Procedure, Practice Desk Book (2017), § 9.2, p 472 ("[T]he question of admissibility turns on an *initial* decision by the court that a reasonable juror *might* find for the proponent on the question."). Once the proponent of the evidence has made the prima facie showing, the evidence is authenticated under MRE 901(a) and may be submitted to the jury. See *Mitchell*, 37 Mich App at 356. At this first stage, the opponent may oppose authentication by arguing that a reasonable juror could not conclude that the proffered evidence is what the proponent claims it to be. Nonetheless, this argument must be made on the basis of the proponent's proffer; the opponent may not present evidence in denial of the genuineness or relevance of the evidence at the authentication stage. See *id*.

Just as the first question—whether the evidence is admissible—is reserved solely to the trial judge, the second question—the weight or reliability (if any) given to the evidence—is reserved solely to the fact-finder, here the jury. When a bona fide dispute regarding the genuineness of evidence is presented, that issue is for the jury, not the trial court. See *id*.

Accordingly, the parties may submit evidence and argument, pro and con, to the jury regarding whether the authenticated evidence is, in fact, genuine and reliable. See *id*.

Federal courts have similarly interpreted FRE 901(a), the counterpart to MRE 901(a) in the Federal Rules of Evidence. See, e.g., *US v Jones*, 107 F3d 1147, 1150 n1 (CA 6, 1997); *US v McGlory*, 968 F2d 309, 328-239 (CA 3, 1992); *US v Silker*, 751 F2d 477, 488 (CA 2, 1984). These and other federal authorities generally hold that a "bona fide dispute as to authenticity or identity is not to be decided by the judge, but rather is to go to the jury." 31A Wright and Miller, Federal Practice and Procedure, (2009), Rule 901, p 363. "In other words, conflicting evidence on genuineness goes to weight, not admissibility, so long as some reasonable person would believe that the item is what it is claimed to be." *Id*.

With this evidentiary distinction in mind, we conclude that the trial judge did not abuse his discretion in determining that a reasonable jury might conclude that the ultrasound image was an actual depiction of plaintiff's procedure. The image showed a sticker that attached the ultrasound to the underlying progress note, and the sticker included plaintiff's identifying information, the date of the procedure at issue, and the name of the doctor who performed the surgery. Thus, the digital image had distinctive characteristics that tended to permit an inference that it depicted the ultrasound generated on the date at issue. See MRE 901(b)(4). Further, Ritsema testified that the digital scan was made from the original record and was part of plaintiff's medical record. See MRE 901(b)(1); MRE 1003. Although plaintiff raised several sound arguments against the image's authenticity, the evidence need not be free from all doubt to be authenticated for purposes of admission, as explained above.

2.      The Trial Judge Did Err by Restricting Plaintiff from Attacking the Genuineness and Reliability of the Ultrasound Image

As to the second aspect, however, the trial judge erred by precluding plaintiff from arguing to the jury that the purported image was not, in fact, an accurate digital scan of the original, i.e., that the image was not genuine or reliable and therefore had little-to-no probative value. The trial judge's role in examining the genuineness and reliability of the image concluded when he held that the image was admissible. Where a bona fide dispute is presented on the genuineness and reliability of evidence, the jury, as finder of fact, is entitled to hear otherwise admissible evidence regarding that dispute. Furthermore, any potential confusion to the jury related to the chain-of-custody involving a non-defendant could have been cured with an appropriate instruction by the trial judge. In foreclosing plaintiff from presenting any evidence disputing whether the image actually depicted plaintiff's procedure, the trial judge in effect determined that the image was indeed genuine and reliable, even though such questions of evidentiary weight are reserved for the jury. In so ruling, the trial judge erred.

With this said, an evidentiary error is not ordinarily grounds for appellate relief, and such relief is appropriate only when the error results in substantial prejudice that denies a fair trial to the aggrieved party. MCR 2.613(A); see also MRE 103; *Lewis v LeGrow*, 258 Mich App 175, 200; 670 NW2d 675 (2003). Here, the error involved a (arguably *the*) crucial piece of evidence. The ultrasound image was the only objective evidence tending to establish whether Dr. Smith properly placed the needle and catheter in plaintiff's shoulder. As noted above, a significant portion of the expert testimony centered on whether the image showed that Dr. Smith performed

the procedure within the appropriate standard of care. Importantly, plaintiff's own expert had to concede that the image depicted a proper needle placement, and his expert was left to speculate on how Dr. Smith could have otherwise acted negligently. Thus, the ultrasound image was a key piece of evidence, and evidence as to its genuineness and reliability would have been quite relevant as to the weight (if any) the jury should have placed on the image. By restricting plaintiff from attacking its genuineness and reliability before the jury, the trial judge abused his discretion and substantial justice requires that we reverse and vacate the judgment.

Plaintiff raises on appeal several other claims of error. Because we hold that the trial judge abused his discretion with respect to the ultrasound image, we need not address the remaining claims.

## III. CONCLUSION

For the reasons explained above, we reverse and vacate the judgment in this case. We remand for further proceedings consistent with this opinion, and we do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause