*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

        Plaintiff/Defendant-Appellant,

v

DANIEL BRINEY,

        Defendant-Appellee,

and

BRONSON HEALTHCARE GROUP, INC.,

        Intervening Plaintiff-Appellee.

UNPUBLISHED
February 8, 2024

No. 363859
Berrien Circuit Court
LC No. 2021-000074-NF

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Plaintiff-appellant, Allstate Fire and Casualty Insurance Company, appeals as of right the judgment of the trial court memorializing the jury's verdict that Allstate waived, or was estopped from, enforcing its cancellation of defendant Daniel Briney's automobile insurance policy. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of a car accident that Briney was involved in on November 4, 2020. At the time, Briney held a no-fault insurance policy through Allstate. Briney made a claim for personal protection insurance (PIP) benefits in relation to the accident. Allstate denied coverage, claiming that the policy was cancelled before the accident. Briney's health insurer, Blue Cross Blue Shield (BCBS), paid intervening plaintiff Bronson Healthcare Group, Inc. (Bronson), for Briney's medical care. Bronson subsequently intervened in this case and filed a complaint against Allstate, seeking reimbursement for medical expenses rendered to Briney following the accident.

Allstate moved for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim) and MCR 2.116(C)(10) (no genuine issue of material fact). Allstate argued that Briney did not have insurance coverage on the date of his accident. Briney responded, arguing that: (1) Allstate reinstated the auto policy, (2) Allstate should be equitably estopped from arguing that the auto policy was cancelled, (3) the trial court should deny Allstate's motion for summary disposition, and (4) the trial court should enter summary disposition in his favor pursuant to "MCR 2.116(1)(2)."[1] Bronson also responded, requesting that the trial court: (1) deny Allstate's motion for summary disposition, (2) enter summary disposition in Bronson's favor pursuant to MCR 2.116(I)(2), and (3) rule that the policy was reinstated before Briney's accident.

The trial court heard oral argument on the motions and ultimately declined to grant any of them, stating:

> There are genuine issues of material fact to be developed, either through further discovery or at trial. But I think this is of—a question of fact for the—a jury to decide whether or not the statement—I think it's an e-mail from Mr. Wertanen, who is an agent of Allstate, bound the company to provide coverage.

The trial court denied Allstate's motion for reconsideration. On the same date of that denial, Allstate stipulated that Briney "incurred reasonable charges" for "reasonably necessary" services for his injuries; (2) Bronson's charges were its "customary charges"; (3) "Bronson provided Allstate with reasonable proof of the fact and amount of loss relative to Mr. Briney's incurred charges"; and (4) "if the jury determines that Allstate owes coverage, Bronson will be entitled to damages from Allstate totaling $716,069.86."

The case was scheduled for trial. Before trial began, Allstate moved in limine to exclude evidence of other no-fault claims beyond Bronson's claim and evidence or testimony from Briney related to insurance coverage, among other pieces of evidence not relevant to this appeal. Additionally, Bronson "move[d] in limine to preclude the admission at trial of evidence and testimony regarding payments or coverage by health insurers pertaining to the care of the patient, Daniel Briney." A hearing on the motions was held. Regarding Bronson's motion to exclude evidence and testimony related to payments or coverage by health insurers, Bronson explained:

> This is more of a situation of priority. If Allstate's complete defense is successful, the only insurance available, it leaves the insurance that paid. However, if Allstate's position is incorrect and the jury so finds, it is unlimited primary payment without regard to benefit, and Bronson will refund or, otherwise, Blue Cross will take back, those provisional payments which were made.
>
> So, our position on this issue is severalfold. First, the issue is irrelevant in the context of this case because of the nature of Mr. Briney's coverage with

---

[1] This was a clerical error; judging by the context of Briney's response, it appears that he was actually referring to "MCR 2.116(I)(2)," which allows the court to enter judgment in favor of the party opposing a motion for summary disposition "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment[.]"

Allstate. Again, a PIP policy can be sold with respect to medical benefits and wage loss benefits as being primary or excess. If it's primary, that means it pays dollar one of all allowable expenses so long as they relate to the car accident and they're reasonable and necessary.

\* \* \*

Beyond the issue that it's irrelevant, even if it is probative on their cancellation defense and the legitimacy or illegitimacy of it under the facts, we believe that it is . . . unfairly prejudicial and that . . . its probative value is significantly outweighed by the prejudicial effect because the jury may conclude that, well, Bronson did receive some health payment, and therefore, we don't really wanna [sic] decide whether this cancellation or reinstatement or estoppel or waiver happened because why should we?

Allstate argued that the trial court should deny Bronson's motion, explaining:

Any recovery at that point in time would be a duplicative recovery at this point in time. To say that I'm gonna [sic] pay it back, we don't know what happens after we leave this courthouse. But as we stand here today, it is a duplicative recovery.

\* \* \*

And, in addition to that, at the very least, the information by Blue Cross Blue Shield is relevant to what the reasonableness of the rates actually were. Blue Cross paid them at—at—at a rate and, certainly, in determining how much a charge actually was, what you were paid and what you accepted by Blue Cross is extremely relevant.

The trial court granted Allstate's motion in part, allowing for the preclusion evidence of other no-fault claims beyond Bronson's claim. It denied Allstate's request to preclude evidence or testimony from Briney related to his insurance coverage. The court also granted Bronson's motion to exclude evidence and testimony related to payments or coverage by other health insurers, reasoning:

[U]nder certain circumstances, an insured who has elected an uncoordinated no-fault policy may obtain double recovery from both the insured's no-fault insurer and the health insurer for medical expenses arising from the same accident. Generally, an insured may pre—precure [sic] insurance policies that are uncoordinated with other policies to allow for such double recovery.

\* \* \*

[W]e have a situation where Bronson's not gonna [sic] be required—be allowed to have a da—a double recovery, bay [sic]—they've made that assertion to the Court, but I don't believe they're entitled to it anyway. But what is from—again, looking at it from a public policy standpoint, what is to prevent a no-fault insurer from stonewalling a claim and refusing to pay the benefits . . . awaiting a health insurer

-3-

to pay the back—to pay the bills, and then say, well, we don't owe that, because his health insurance paid it.

Now, the issue of double recovery is—this Court can a—address that, but it appears that that's not the issue in this case. The issue is whether or not there was a policy in place, whether or not he incurred, and I think incurred means that, at some point in time, those bills were required—were in answer to the medical treatment, which he was provided.

And [MCL 500.3112] specifically allows the health care provider to—to make a claim and assert a direct cause of action against the insurer. And in this case, I don't think there's any question that, whatever PIP benefits were to be paid were denied and, therefore, if they find the policy was in effect, they're overdue. So, I think they're at—they can go after all of those past a—a—bills that were incurred by the—by the insured.

\* \* \*

[I]n this case, the priority goes to the no-fault insurer of—of Mr. Briney, which, in this case, is Allstate.

The trial court acknowledged that the Allstate policy contained what appeared to be a nonduplication-of-benefits clause. However, it noted that "under certain circumstances, an insured who has elected an uncoordinated no-fault policy may obtain double recovery from both the insured's no-fault insurer and the health insurer for medical expenses arising from the same accident."

The case went to trial, and the jury returned a verdict in favor of Briney and Bronson. Reading the verdict, the jury foreperson stated:

For question number one, did Allstate properly cancel the Briney's automobile insurance policy for the 1992 Jeep Comanche prior to November 4th, 2020? Yes.

If yes, was the Briney's automobile insurance policies for the 1992 Jeep Comanche reinstated prior to the November 4th, 2020, motor vehicle accident? No.

Did Allstate waive or is it estopped from enforcing its cancellation of the Briney's automobile insurance policy for the 1992 Jeep Comanche? Yes.

In accordance with the jury verdict and stipulated orders, the trial court ordered that Allstate is "waived, or is estopped from, enforcing its cancellation" of the policy, and entered a judgment in favor of Bronson in the amount of $735,768.38. This appeal followed.

## II. ANALYSIS

Allstate argues that the trial court erred by excluding evidence of BCBS's payments to Bronson. We disagree.

-4-

"We review a trial judge's evidentiary decisions for an abuse of discretion. A trial judge abuses [their] discretion when the judge selects an outcome that is outside the range of principled outcomes." *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 153-154; 908 NW2d 319 (2017) (citation omitted). "We review de novo whether the trial judge properly interpreted and applied the rules of evidence to the facts." *Id*. at 154. "[A]n evidentiary error is not ordinarily grounds for appellate relief, and such relief is appropriate only when the error results in substantial prejudice that denies a fair trial to the aggrieved party." *Id*. at 157-158.

In *Dancey v Travelers Prop Cas Co*, 288 Mich App 1, 8; 792 NW2d 372 (2010) (quotation marks and citation omitted), this Court explained:

> An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. The policy application, declarations page of the policy, and the policy itself construed together constitute the contract. An insurance contract should be read as a whole, with meaning given to all terms.

Additionally, we give "the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument. We must give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Northline Excavating, Inc v Livingston Co*, 302 Mich App 621, 627-628; 839 NW2d 693 (2013) (quotation marks and citation omitted).

We first address whether evidence of insurance payments from BCBS was relevant to the reasonableness of the amounts charged by Bronson. Allstate argues that this evidence was relevant because Briney was not entitled to duplicate benefits from BCBS. There is no dispute that the policy at issue in this case is uncoordinated. If a no-fault automobile insurance policy is uncoordinated, it means that the "no-fault automobile insurance would pay benefits regardless of whatever other insurance the insured may have." *Smith v Physicians Health Plan, Inc*, 444 Mich 743, 747; 514 NW2d 150 (1994). Although Briney's no-fault insurance policy through Allstate is uncoordinated, it bears noting that it contains an amendatory coordination-of-benefits provision, which states that PIP benefits are coordinated only if "Allowable Expenses (Medical) are identified as excess on the Policy Declarations[.]" Allowable medical expenses were *not* identified as excess on the policy declarations, and are thus not considered coordinated under the policy. Accordingly, even if Briney received coverage from other insurers, such as BCBS, Allstate would nevertheless be required to pay PIP benefits. In sum, because the insurance policy was uncoordinated and did not contain any language limiting or preventing Briney's "right of recovery in the context of multiple insurance policies," *Shanafelt v Allstate Ins Co*, 217 Mich App 625, 642; 552 NW2d 671 (1996), whether Briney could recover from BCBS had no bearing on whether Allstate was required to pay PIP benefits.

Despite this, Allstate argues that the "nonduplication" provision in Briney's insurance policy prevented duplicate recovery for the same expense or loss. The clause at issue states:

> Regardless of the number of motor vehicles insured, or the number of insurers or self-insurers providing security under the provisions of Chapter 31 of the Michigan Insurance Code, or the provisions of any other law providing for no-

fault benefits for motor or other vehicle accidents, no person may recover duplicate benefits for the same expenses or loss.

If the injured person is entitled to recover benefits under more than one policy, the maximum recovery under all policies will not exceed the amount payable under the provisions of the policy providing the highest dollar limit.

Allstate misunderstands the purpose of this clause. Such clauses do not prevent so-called "duplicate recovery" from an automobile insurer and a health insurer for the same injury. Instead, the clause is more fairly characterized as an "anti-stacking" provision, which would prevent Briney from "double-dipping" by attempting to obtain no-fault insurance benefits from more than one automobile insurance company. Such provisions "preclude[] duplication of benefits where more than one no-fault motor vehicle policy is involved." *Wiltzius v Prudential Prop and Cas Co*, 139 Mich App 306, 311; 361 NW2d 797 (1984); see also *State Farm Mut Auto Ins Co v Tiedman*, 181 Mich App 619, 624; 450 NW2d 13 (1989) (stating that "if two insurance policies list the same insured and that person is involved in a traffic accident, coverage is available only under the policy with the highest limit, regardless of whether the policies are issued to separate vehicles and whether other persons are also listed as named insureds.").

In an effort to support its argument, Allstate argues that this case is analogous to *Dodd v Allstate Fire and Cas Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued December 16, 2021 (Docket No. 355594). Unpublished opinions of this Court are not binding, MCR 7.215(C)(1), but may be considered "for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017). But contrary to Allstate's argument, we believe that *Dodd* may have been wrongly decided. In that case, the plaintiffs' automobile insurance policy was uncoordinated, but the policy contained a "nonduplicate payment provision" with the exact same language as the nonduplication clause at issue in this case. *Id*., unpub op at 1-2. The plaintiffs argued that even though their medical bills had already been paid by their health insurance, they were entitled to duplicate recovery from their automobile insurance because their policy was uncoordinated. *Id*. The defendant insurer argued that the nonduplication provision in the insurance policy prevented the plaintiffs from recovering more than they already received. *Id*., unpub op at 2. A panel of this Court concluded that "[t]he plain language of the nonduplication provision prevent[ed] duplicate recovery for the same expense or loss . . . ." *Id*., unpub op at 3. However, as previously stated, the "nonduplication" provision at issue here—as well as the provision in *Dodd*—are actually "anti-stacking" provisions, designed to preclude recovery from multiple automobile insurers. In any event, we do not find *Dodd* persuasive and decline to apply it here.

Ultimately, we conclude that the evidence relevant to Briney's receipt of payments from BCBS was irrelevant to the question of whether Bronson may recover no-fault benefits from Allstate. Relatedly, we conclude that the trial court did not abuse its discretion by determining that the probative value of the evidence at issue was not outweighed by the danger of unfair prejudice that could result from its admission, see MRE 403. As the trial court observed, if a jury were to hear that Briney received coverage through his health insurer for the injuries sustained in the accident, they might draw the incorrect conclusion that Bronson was not entitled to payment from Allstate, and completely overlook that the ultimate question was not whether Briney was

properly reimbursed, but instead whether Allstate failed to uphold its duty to pay PIP benefits to Bronson under the insurance policy.

Allstate nevertheless argues that by declining to admit evidence of payments made by BCBS, the trial court prevented the jury from hearing evidence relevant to determining whether the charges incurred by Bronson were reasonable and customary under the no-fault act. In *Spectrum Health Hosps v Farm Bureau Mut Ins Co*, 333 Mich App 457, 499; 960 NW2d 186 (2020), this Court stated that "while it is certainly not dispositive of the reasonableness of a charge, the amount that third parties pay is nevertheless evidence bearing on the reasonableness of a healthcare provider's fees." However, on appeal, Bronson points out that Allstate stipulated to the reasonableness of the charges. Our review of the record indicates that this statement is accurate; in a series of stipulations made on October 7, 2022, Allstate stipulated "[t]hat Daniel Briney incurred reasonable charges with intervening plaintiff Bronson for reasonably necessary products, services and accommodations for the care, recovery or rehabilitation of accidental bodily injury . . . sustained in the November 4, 2020 motor vehicle accident[.]" We thus conclude that Allstate's argument on this issue lacks merit.

For all of the foregoing reasons, the judgment of the trial court is affirmed. Having prevailed in full, defendants may tax costs. MCR 7.219(A).

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick

-7-