*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PAUL BISCHOFF, JR., and ELIZABETH
BISCHOFF,

        Plaintiffs-Appellants,

v

MICHELE BEAUVAIS-WAGONER, Trustee of the
BEAUVAIS FAMILY REVOCABLE LIVING
TRUST OF ROBERT Z. BEAUVAIS AND MARIE
T. BEAUVAIS,

        Defendant-Appellee.

UNPUBLISHED
May 14, 2025
11:07 AM

No. 368749
Manistee Circuit Court
LC No. 2022-017778-CH

Before: O'BRIEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

In this action to quiet title, plaintiffs appeal as of right the trial court's order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

Plaintiffs and defendant own adjacent properties—defendant owns the eastern property, which this opinion will refer to as the Rudolph property, and plaintiffs own the western property, which this opinion will refer to as the Beauvais property. Robert and Marie Beauvais, defendant-trustee's now-deceased parents, purchased the Beauvais property in 1963. The Beauvaises planted a line of trees along the western edge of the property in 1970. In 1980, Albert and Phyllis Rudolph purchased the Rudolph property. Before 1993, the Rudolph property and the Beauvais property were separated by a platted road called "Fruitdale Road." In 1993, the Beauvaises and the Rudolphs obtained a judgment vacating Fruitdale Road. This resulted in each property expanding to what was previously the center of the Fruitdale Road, and the properties now abutted one another. Significantly, this expansion of the Beauvais property meant that the trees the Beauvaises planted no longer marked the western boundary of the Beauvais property.

In 1993, when Fruitdale Road was vacated, the Rudolph property had a trailer on the eastern side. The Rudolphs would use a driveway on the west side of the property—opposite the

Beauvais property—to access the trailer. At some point between 1997 and 2003, Phyllis had a house built on the Rudolph property where the trailer had been. The house had a garage facing the Beauvais property, and a gravel driveway leading to the garage was placed on the eastern side of the property, roughly where Fruitdale Road used to be. This meant that the driveway encroached onto the Beauvais property from the center of what used to be Fruitdale Road to about the line of trees that the Beauvaises planted in 1970. Phyllis used this driveway to access the house.

In 2014, after Phyllis passed away, plaintiffs purchased the Rudolph property. They did not have a survey performed and understood the line of trees that the Beauvaises planted in 1970 to be the boundary between the Rudolph property and the Beauvais property. Plaintiffs used the driveway on the Rudolph property to access the house. Plaintiffs also obtained a short-term rental certificate, and their short-term tenants used the driveway as well.

Plaintiffs' use of the Rudolph property as a short-term rental caused tensions between plaintiffs and defendant to rise, which included defendant complaining about plaintiffs' use of the portion of the driveway that encroached on the Beauvais property. Unable to come to a mutually-agreeable resolution, defendant, in May 2022, had several large boulders placed at the entrance of plaintiffs' driveway roughly to the extent that it encroached on the Beauvais property. While these boulders blocked some of the driveway, it could still be used to access the house on the Rudolph property. In September 2022, defendant had fence stakes placed along the boundary line between the Beauvais property and the Rudolph property. The fence ran down the middle of plaintiffs' driveway, effectively cutting the driveway in half.

Plaintiffs filed this action shortly after the fence was built, requesting quiet title to the driveway under the doctrine of adverse possession, or, in the alternative, a prescriptive easement for the driveway.[1] In answer, defendant argued that plaintiffs could not establish hostile use of the driveway for the necessary 15-year period because Phyllis's use of the driveway had been permissive.

During discovery, Patrice Beauvais (daughter of Robert and Marie) testified that Robert had told her about a conversation he had with Marie in which Robert and Marie discussed the encroaching driveway and decided to allow Phyllis to use it because they were friends. Patrice also averred that she was present for a conversation between Robert and Phyllis in which Robert told Phyllis that the driveway encroached on the Beauvais property and that Phyllis had permission to use the driveway.

Defendant moved for summary disposition in July 2023, arguing that Phyllis's use of the driveway had been permissive, so plaintiffs could not establish hostile use of the driveway for the

_____

[1] Plaintiffs also raised an acquiescence claim in the trial court. The trial court dismissed that claim, and plaintiffs do not argue on appeal that this was error. We therefore do not address plaintiffs' acquiescence claim, and we consider any argument that the trial court erred by dismissing plaintiffs' acquiescence claim to be abandoned. See *Lashbrook v Grasak*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369669); slip op at 5, n 4 (explaining that a party abandons an argument "[b]y failing to address" it).

necessary 15-year period, and their adverse-possession and prescriptive-easement claims failed. In response, plaintiffs argued in pertinent part that Patrice's testimony, which was the only evidence that Phyllis's use of the driveway was permissive, was inadmissible hearsay. Plaintiffs alternatively argued that the doctrine of laches barred defendant's permissive-use defense because defendant "waited six years after [plaintiffs'] purchase to raise this allegation."

Following a hearing, the trial court granted defendant's motion in a written opinion and order. The court ruled that Patrice's testimony about the conversation between Robert and Marie was admissible under MRE 803(3) (the state-of-mind exception to hearsay) and that her testimony about the conversation between Robert and Phyllis was either not hearsay or was also admissible under MRE 803(3) as evidence of Robert's intent to allow Phyllis to use the portion of her driveway that encroached on the Beauvais property. After determining that Patrice's contested testimony was admissible, the court concluded that, because Phyllis's use of the encroaching driveway was permissive, it was not hostile, so plaintiff's claims for adverse possession and prescriptive easement failed. The court also rejected plaintiffs' alternative argument, ruling that the doctrine of laches was inapplicable because it could not be used to bar a defense.

This appeal followed.

## II.  HEARSAY

Plaintiffs first argue that the trial court erred by admitting Patrice's testimony about the conversation she had with her father, Robert, regarding the driveway, and the conversation she overheard her father have with Phyllis regarding the driveway. We agree that the former statement was inadmissible hearsay but disagree that the latter statement was inadmissible.

A trial court's decision to admit evidence is reviewed for an abuse of discretion. *Shivers v Covenant Healthcare System*, 339 Mich App 369, 373; 983 NW2d 427 (2021). A trial court abuses its discretion when it "chooses an outcome falling outside the range of principled outcomes." *Id*. at 374. An error in the admission of evidence is only grounds for appellate relief "when the error results in substantial prejudice that denies a fair trial to the aggrieved party." *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 157-158; 908 NW2d 319 (2017).

At issue is the trial court's decision to admit two statements in which Patrice testified about something that Robert had said, which gives rise to hearsay concerns. Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement." MRE 801(c). Hearsay is inadmissible unless an exception applies. MRE 802. One such exception is the state-of-mind exception in MRE 803(3), which provides that the following is not excluded by the rule against hearsay:

> A statement of the declarant's then-existing state of mind or emotional, sensory, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity, or terms of declarant's will.

## A.  ROBERT'S STATEMENT TO PATRICE

The first statement to which plaintiffs object is the following statement averred to by Patrice in an affidavit:

> When the two-track driveway was created on the east side of the [Rudolph] property, my father Robert Beauvais showed me the driveway.  He explained to me that a portion of the driveway was over the boundary line between the [Rudolph] and Beauvais properties.  My father told me that he had discussed the encroaching driveway with my mother, Marie Beauvais, and that they had come up with a solution.  He told me that they had agreed to offer Phyllis Rudolph permission to use that part of the Beauvais property onto which Phyllis Rudolph's two-track driveway encroached while she owned the property and lived there.

We agree with the trial court that this statement was hearsay.  Patrice was testifying about an out-of-court statement made by Robert, and defendant was admitting the statement to prove the truth of Robert's statement—that he and Marie agreed to offer Phyllis permission to use the encroaching portion of the driveway.

The trial court erred, however, by admitting this statement under MRE 803(3) because the statement is clearly one of Robert's memory being admitted to prove the fact remembered—Robert was recounting to Patrice a conversation that he had previously had with Marie, and Robert's statement was being admitted to prove that the conversation took place.  MRE 803(3), by its plain terms, does not allow this type of statement to be admitted for this purpose.  The trial court therefore erred by admitting the statement.

But we believe that this error was harmless.  While the trial court did rely partially on this statement to determine that Phyllis's use of the driveway had not been hostile, Patrice's testimony that Robert told Phyllis she had permission to use the driveway was also admitted, and it also established that Phyllis's use was permissive.  For reasons explained in the following section, we conclude that the trial court did not err by admitting Patrice's testimony about Robert's statements to Phyllis, so the court's incorrect admission of Robert's statement to Patrice about a conversation he had with Marie did not prejudice plaintiffs.  See *Mitchell*, 321 Mich App at 158 (explaining that an evidentiary error only requires reversal if it "results in substantial prejudice that denies a fair trial to the aggrieved party").

## B.  ROBERT'S STATEMENT TO PHYLLIS

The second statement made by Patrice to which plaintiffs object is as follows:

> Later, I was present when Phyllis Rudolph came to the Beauvais cottage, where my parents and Phyllis Rudolph discussed the encroachment.  My father told Phyllis Rudolph that the driveway was significantly over the property line.  He said to her that, because of the friendship between her and my mother, they agreed to permit her to use the part of the two-track driveway which is on the Beauvais property while she owned the property and lived there, but that they did not want to give up the property.

-4-

The trial court concluded that this statement was admissible for the nonhearsay purpose of showing its effect on Phyllis—that she had knowledge that her use of the portion of her driveway encroaching on Robert's property was with his permission. The trial court alternatively reasoned that, if the statement was hearsay, it was admissible under MRE 803(3) to show Robert's "then-existing state of mind regarding his intent or plan for the encroaching driveway at the time such permission was granted[.]"

As to the trial court's first conclusion, it is well-established that an out-of-court statement is not hearsay if it is offered "to show its effect on a listener, as opposed to proving the truth of the matter asserted." *People v Gaines*, 306 Mich App 289, 306-307; 856 NW2d 222 (2014). We agree with the trial court that Patrice's statement about Robert's conversation with Phyllis was admissible for the nonhearsay purpose of showing the effect of the statement on Phyllis. The statement is admissible not to show that Robert did, in fact, grant Phyllis permission to use the driveway, but to show that Phyllis heard Robert say that he granted her permission to use the driveway, giving her knowledge that her continued use of the driveway was not hostile.[2]

As for the trial court's alternative reasoning, we conclude that, assuming Patrice's statement about Robert's conversation with Phyllis was hearsay, the trial court did not abuse its discretion by admitting the statement under MRE 803(3). Robert's statement shows that he was aware that the driveway encroached on his property, and that he wanted Phyllis to be able to use the encroaching portion of her driveway while she lived next door to Robert and Marie. This demonstrates that Robert intended to permit Phyllis's use of the encroaching portion of her driveway, which in turn establishes that Phyllis's use of the driveway was not hostile. We accordingly conclude that the trial court's alternative basis for admitting Patrice's disputed testimony did not amount to an abuse of discretion.

---

[2] MRE 801(c) mirrors its federal counterpart, FRE 801(c). As our Supreme Court explained, "when a particular rule is drawn from the corresponding Federal rule, the Michigan Committee Note usually does not restate the rule's background or comment on its meaning. Rather the Federal Advisory Committee Notes and Congressional reports are allowed to speak for themselves." *People v Malone*, 445 Mich 369, 379; 518 NW2d 418 (1994) (quotation marks and citation omitted). For the definition of hearsay in FRE 801(c), the advisory committee notes state:

> The definition follows along familiar lines in including only statements offered to prove the truth of the matter asserted. If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay. . . . The effect is to exclude from hearsay the entire category of "verbal acts" and "verbal parts of an act," in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights. [FRE 801, advisory committee notes (citations omitted).]

There may be a colorable argument that Robert's statement granting Phyllis permission to use the encroaching portion of her driveway was a verbal act (and therefore not hearsay) because it ostensibly brought about a legal consequence simply because it was spoken. Defendant has never made this argument, however, so we do not address the issue further.

## III. SUMMARY DISPOSITION

Plaintiffs alternatively argue that even if Patrice's testimony was admissible, the trial court still erred by granting defendant's motion for summary disposition because a reasonable trier of fact could disbelieve Patrice's testimony. We disagree because plaintiffs have failed to identify evidence that puts Patrice's credibility at issue.

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Mapp v Progressive Ins Co*, 346 Mich App 575, 584; 13 NW3d 643 (2023). Defendant moved for summary disposition under MCR 2.116(C)(10). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Anderson v Transdev Services, Inc*, 341 Mich App 501, 507; 991 NW2d 230 (2022) (quotation marks and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

When determining whether to grant a motion for summary disposition under subrule (C)(10), a trial court may not assess credibility or weigh the evidence. *Id*. at 507. But that does not mean that a deponent's or affiant's credibility can never be considered at the summary-disposition stage. If the nonmoving party identifies "evidence that puts the affiant's or the deponent's credibility at issue," then the nonmoving party can "avoid summary disposition." *Franks v Franks*, 330 Mich App 69, 90; 944 NW2d 388 (2019). That said, "the nonmoving party may not rely on the fact that a jury might disbelieve a witness's testimony to establish a question of fact that precludes summary disposition." *Id*. at 89.

In an attempt to put Patrice's credibility at issue, plaintiffs first argue that Patrice's testimony is uncorroborated. While that is true, it is not evidence of anything, let alone evidence that puts Patrice's credibility into question.

Second, plaintiffs argue that Patrice's testimony is "flatly inconsistent" with an email she sent to Phyllis's daughter in 2022 because, in the 2022 email, Patrice only mentioned the conversation she had with Robert, and did not mention witnessing a conversation between Robert and Phyllis. Plaintiffs are correct insofar as Patrice stated in the 2022 email that she "remember[ed] having a conversation with [her] dad about the driveway situation, and he said that they and your mom had agreed to allow it to be that way while the cottage was hers." Immediately after this statement, Patrice asked Phyllis's daughter if she remembered when "the driveway actually move[d] across the property line." Given this context, it is simply not apparent how Patrice's email is inconsistent with her later testimony that she overheard a conversation between Phyllis and Robert about the driveway. Plaintiffs argue that a reasonable factfinder could infer from Patrice's email that Patrice was "fishing" for Phyllis's daughter's ability to refute Patrice's account, but plaintiffs provide no facts from the record to support this theory—it is sheer speculation, which cannot establish a genuine issue of material fact. See *Estate of Trueblood v P&G Apartments*, LLC, 327 Mich App 275, 289; 933 NW2d 732 (2019).

Third, plaintiffs argue that Patrice's testimony is suspicious because Patrice first came forward with her story about witnessing the conversation between Phyllis and Robert after

plaintiffs filed their lawsuit. While it is true that Patrice came forward with her testimony after this lawsuit commenced (which is hardly unusual), Patrice's testimony was not the first time that plaintiffs were told that Phyllis used the portion of the driveway encroaching on the Beauvais property with Robert's and Marie's permission—there is evidence in the record establishing that defendant-trustee told plaintiffs as much before they initiated this lawsuit. Additionally, plaintiffs provide no authority for the proposition that the timing of an affidavit alone can call the testimony into question. "It is not sufficient for a party simply to announce a position . . . and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *In re Estate of Huntington*, 339 Mich App 8, 16 n 3; 981 NW2d 72 (2021).

Fourth, plaintiffs argue that the parties' and their predecessors' actions are inconsistent with Phyllis's use of the driveway being permissive. Plaintiffs argue that it does not make sense (1) for Robert, who had a legal education, to allow Phyllis to make improvements on the Beauvais property and encroaching driveway, then make an agreement with her about the driveway without memorializing it in writing, or (2) for the Beauvaises to continue to allow the owners of the Rudolph property to use the driveway after Phyllis's death. Like most of plaintiffs' other arguments, this one is speculative—plaintiffs do not identify any evidence that puts Patrice's credibility at issue. See *Franks*, 330 Mich App at 90. Additionally, the testimony in this case established that Phyllis and the Beauvaises had a friendly relationship, and Patrice testified that "it wasn't in writing to try to make sure that nothing got in the way of that friendship." Plaintiffs have not cited any record evidence to dispute this.

Fifth, plaintiffs argue that Patrice's testimony is inconsistent with surveys that the Beauvaises had done 2003 and 2017 because those surveys allegedly did not show an encroachment and, according to plaintiffs, the Beauvaises would not have allowed the surveys to stand if they were, in fact, aware of the encroachment. We reject this argument outright with respect to the 2003 survey because the portion of the survey showing the border between the Beauvais property and the Rudolph property is illegible, and there is no other evidence establishing whether the 2003 survey showed an encroachment. As for the 2017 survey, it does not appear to show the encroachment, but it does appear to show the vacated road over which the driveway was placed. Additionally, the boundary line between the Beauvais property and the Rudolph property on the 2017 survey appears the same as the boundary line on the 2022 survey—on both surveys, the boundary line is in the middle of the vacated road. At any rate, we disagree with plaintiffs that Patrice's credibility is at issue simply because the 2017 survey does not show an encroachment.[3]

Finally, plaintiffs argue that there is a question of fact about Patrice's credibility because Patrice is an interested party, and because Patrice "demonstrated bias and animus toward the Bischoffs." Plaintiffs contend that Patrice is an interested party because she is a beneficiary of the trust that owns the Beauvais property, but Patrice testified that she and her husband decided on a "different split" of the property so she could build her own cottage and that this "kind of took me out of the equation of" the Beauvais property. Patrice did not know who would own the Beauvais

---

[3] Indeed, there appears to be no dispute that the driveway encroaches on the Beauvais property, at least as the properties are recorded.

property in the event of the other beneficiaries' deaths, but she agreed that her understanding of the trust was that she would not receive the Beauvais property. Plaintiffs have not provided any authority to support their assertion that, in the absence of facts contradicting a witness's testimony, a witness's status as a beneficiary of a trust that owns a property calls the witness's credibility into question such that summary disposition is precluded. At best, this information may induce a jury to disbelieve Patrice, but the potential disbelief of a jury is insufficient to preclude summary disposition. *Id.*

Plaintiffs further argue that Patrice's statements that Paul Bischoff was "unbending" and that she "never heard any good, reasonable response . . . from his side" showed animosity and bias toward plaintiffs. However, the trial court does not consider witness credibility when deciding whether to grant summary disposition. *Anderson*, 341 Mich App at 507. Additionally, as discussed, the potential that the jury might disbelieve testimony does not preclude summary disposition. *Franks*, 330 Mich App at 89. Ultimately, the part of Patrice's testimony that is at issue concerns a conversation that plaintiffs were not part of. Patrice's negative description of Paul's conduct during the lawsuit is therefore not directly relevant to her assertions that her father gave Phyllis permission to use the driveway.

Accordingly, because plaintiffs have failed to identify evidence that puts Patrice's credibility at issue, and instead rely on mere speculation or assertions that a jury might disbelieve Patrice's testimony, the trial court did not err in its determination that plaintiffs failed to establish a genuine factual dispute as to Phyllis's permissive use of the driveway. The trial court therefore properly granted summary disposition in favor of defendant on plaintiffs' claims for adverse possession and prescriptive easement.[4]

## IV. LACHES

Plaintiffs lastly argue that the trial court erred by declining to apply the doctrine of laches to bar defendant from arguing that Phyllis's use of the encroaching portion of the driveway was permissive. We disagree.

A trial court's decision to apply equitable doctrines such as laches is reviewed de novo. *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013).

"Laches is an equitable tool used to provide a remedy for the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert." *Sylvan Twp v Chelsea*, 313 Mich App 305, 327; 882 NW2d 545 (2015). As our Supreme Court explained nearly a century ago, "Laches will not bar a defense in equity. It is only a bar to affirmative equitable relief prayed

---

[4] In a single paragraph, plaintiffs claim that there is circumstantial evidence that creates a question of fact in this case, but plaintiffs do not identify the evidence to which they are referring. We additionally note that the record in this case is voluminous, and we have limited our consideration of whether there is a question of fact to the evidence identified by plaintiffs. We consider any argument that other evidence in the record creates a question of fact to be abandoned. See *Lashbrook*, ___ Mich App at ___; slip op at 5, n 4.

because, when laches appear, the court merely leaves the parties where it finds them." *Duck v McQueen*, 263 Mich 325, 328; 248 NW 637 (1933).

In this case, defendant is not seeking equitable relief; plaintiffs are, because they are seeking either quiet title or a prescriptive easement. MCL 600.2932; *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007). Because the doctrine of laches is "only a bar to affirmative equitable relief prayed," it would be improper to allow a plaintiff to use laches to *gain* affirmative equitable relief, as plaintiffs seek to do in this case. See *Duck*, 263 Mich at 328. The trial court therefore did not err by disallowing plaintiffs' use of laches.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello