*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LLESH DUSHKAJ,

        Plaintiff-Appellant/Cross-Appellee,

v

DAVID LYNN TROWBRIDGE,

        Defendant-Appellee/Cross-Appellant,

and

IDS PROPERTY CASUALTY INSURANCE
COMPANY,

        Defendant.

UNPUBLISHED
January 24, 2025
9:36 AM

No. 364544
Oakland Circuit Court
LC No. 2019-178285-NI

Before: BOONSTRA, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order entering a judgment of no cause of action following a jury trial related to injuries plaintiff suffered in an automobile accident involving defendant. In addition, defendant cross-appeals by right the trial court's order denying his motion for case evaluation sanctions under MCR 2.403. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff's claims against defendant arise from an automobile collision on May 24, 2017. Plaintiff is an Albanian immigrant who relies on his son, Dritan Dushkaj, and daughter-in-law, Jonida Kambo, to translate English for him. At the time of the accident, plaintiff was 71 years old. The parties do not dispute that defendant struck the rear of plaintiff's vehicle after plaintiff stopped his vehicle to allow ducks to cross the road in front of his car. The police accident report made at the time of the accident stated that neither plaintiff nor defendant, nor any of their passengers, complained of any injuries at the crash site. Plaintiff, however, did go to the hospital emergency

-1-

room for treatment because he was experiencing pain and dizziness. None of the diagnostic imaging ordered in the emergency room revealed objective signs of injury.

Plaintiff initiated this lawsuit asserting a third-party claim for tort damages against defendant and a first-party claim for personal injury protection benefits against his no-fault insurance carrier. Plaintiff alleged that the accident left him physically and mentally disabled, supporting a cause of action under the residual tort liability provision of the no-fault act, MCL 500.3101 *et seq.* He alleged that his continuing problems with postconcussion syndrome, neck and low back pain, dizziness, and memory deficits prevent him from living the normal life he enjoyed before the accident. Plaintiff's first-party claim was resolved by settlement before trial, and the parties agreed to submit the case to a facilitator in lieu of a case evaluation panel under MCR 2.403. The facilitator awarded plaintiff $10,000, which plaintiff rejected.

Plaintiff's claim against defendant, therefore, proceeded to trial, and the jury found that plaintiff sustained injuries in the accident caused by defendant, but that he did not prove an objectively manifested impairment of a body function. The trial court entered a judgment of no cause of action. Plaintiff moved for judgment notwithstanding the verdict (JNOV) or a new trial, arguing that jurors informed the attorneys after the trial that they were influenced by a copy of the police accident report. This report had not been admitted into evidence, but it was somehow submitted to the jury. Plaintiff also argued that the jury's verdict was inconsistent with the evidence, that the trial court erroneously admitted irrelevant testimony from Kambo, and that the trial court wrongly denied plaintiff's request to call rebuttal witnesses. The court denied plaintiff's motion for JNOV or a new trial. Defendant subsequently moved for case evaluation sanctions under MCR 2.403, which the trial court denied. This appeal followed.

## II. POLICE REPORT

Plaintiff first argues that the erroneous submission of the police accident report to the jury deprived him of a fair trial. We disagree.

### A. STANDARDS OF REVIEW

The trial court's ruling on a motion for JNOV is reviewed de novo. *Attard v Citizens Ins Co of America*, 237 Mich App 311, 321; 602 NW2d 633 (1999). "In reviewing the decision on a motion for JNOV, this Court views the testimony and all legitimate inferences drawn from the testimony in the light most favorable to the nonmoving party. If reasonable jurors could honestly have reached different conclusions, the jury verdict must stand." *Diamond v Witherspoon*, 265 Mich App 673, 682; 696 NW2d 770 (2005) (citation omitted). The trial court's decision on a motion for a new trial is reviewed for abuse of discretion. *Estate of Carlsen by Carlsen v Southwestern Michigan Emergency Servs, PC*, 338 Mich App 678, 693; 980 NW2d 785 (2021). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Bradley v Progressive Marathon Ins Co*, 345 Mich App 126, 131; 3 NW3d 559 (2022) (quotation marks and citation omitted).

### B. ANALYSIS

"Within 21 days after entry of judgment, a party may move to have the verdict and judgment set aside, and to have judgment entered in the moving party's favor." MCR 2.610(A)(1). MCR 2.611(A)(1)(a) permits the trial court to grant a new trial by reason of an "[i]rregularity in the proceedings of the court, jury, or prevailing party, or an order of the court or abuse of discretion which denied the moving party a fair trial." "To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." MRE 103(d). "The consideration of documents that are not admitted into evidence but are submitted to the jury does not constitute error requiring reversal unless the error operated to substantially prejudice the party's case." *Phillips v Deihm*, 213 Mich App 389, 402; 541 NW2d 566 (1995).

Here, the alleged error was the inadvertent submission to the jury of a document that had been excluded from evidence. There is no record evidence documenting the underlying facts of plaintiff's claim of error, and plaintiff did not ask to make a record of the jurors' statements or to recall the jurors for questioning regarding how the police report influenced them. However, the trial court's and parties' comments at the December 21, 2022 hearing on plaintiff's motion reflect their agreement that the police report was inadvertently submitted to the jury, and that at least one juror stated that the police report was a deciding factor in his or her evaluation of the evidence. In that police report, the officer stated that plaintiff "appeared normal" at the time of the crash, and was "checked out by WLFD and released on scene with a complaint card."

Plaintiff contends that the police report was highly prejudicial because it contradicted his testimony and his witnesses' testimony that he suffered an impairment of an important body function. However, plaintiff cannot demonstrate that the entries in the police report were more persuasive to the jury than the combined expert opinion testimony of defendant's experts, who testified that plaintiff did not suffer an impairment of an important bodily function. Moreover, the jury's verdict is consistent with the notion that although the jury believed plaintiff was injured during the accident, he was unable to show that he suffered an objectively manifested impairment of a body function. See *Phillips*, 213 Mich App at 403 (stating that the jury's review of charts not admitted into evidence was not grounds for a new trial because "[i]t was not shown that anything unfairly prejudicial to defendant was on the charts.").

Under these circumstances, we not convinced that plaintiff has demonstrated prejudice. The trial court, therefore, did not err when it denied plaintiff's motion for JNOV or a new trial.

## III. CONSISTENCY OF VERDICT WITH EVIDENCE

Plaintiff next argues that the evidence did not support the jury's finding that his injury did not rise to the level of a threshold injury under the no-fault act. He argues that his injuries to the head, neck, and back necessarily constitute impairments affecting an important body function, and that he is, therefore, entitled to a new trial. We disagree.

## A. STANDARDS OF REVIEW

This Court reviews the trial court's decision on a motion for new trial for abuse of discretion. *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 551; 985 NW2d 121 (2020). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Bradley*, 345 Mich App at 131 (quotation marks and citation omitted).

## B. ANALYSIS

A new trial may be granted on grounds of "[a] verdict or decision against the great weight of the evidence or contrary to law." MCR 2.611(A)(1)(e). "In deciding whether to grant or deny a motion for a new trial, the trial court's function is to determine whether the overwhelming weight of the evidence favors the losing party." *Barnes*, 334 Mich App at 551 (quotation marks and citation omitted). "This Court gives substantial deference to a trial court's determination that the verdict is not against the great weight of the evidence." *Id*. (quotation marks and citation omitted). "This Court and the trial court should not substitute their judgment for that of the jury unless the record reveals that the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id*. (quotation marks and citation omitted). This Court will not set aside a jury's verdict if it is supported by competent evidence. *Id*. This Court defers to the jury's findings of fact and to its decisions regarding the weight it gives to testimony. *Id*. at 551-552.

"Motions for a directed verdict or JNOV are essentially challenges to the sufficiency of the evidence in support of a jury verdict in a civil case." *Taylor v Kent Radiology*, 286 Mich App 490, 499; 780 NW2d 900 (2009). "If reasonable persons, after reviewing the evidence in the light most favorable to the nonmoving party, could honestly reach different conclusions about whether the nonmoving party established his or her claim, then the question is for the jury." *Id*. at 500.

The no-fault act imposes a threshold injury requirement for recovery in third-party automobile negligence actions. A plaintiff must demonstrate that a defendant's ownership, maintenance, or use of a motor vehicle caused the plaintiff to suffer "death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). " 'Serious impairment of body function' means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5).

To demonstrate a serious impairment of body function, a plaintiff must show: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010). With respect to the first prong, the plaintiff must show that injuries resulting from the accident were "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Id*. The injury must be observable or perceivable from actual symptoms or conditions." *Piccione v Gillette*, 327 Mich App 16, 20; 932 NW2d 197 (2019).

The jury found that plaintiff sustained an injury, but that the injury did not meet the statutory threshold of a serious impairment of a body function. This verdict was supported by competent evidence. Dr. Kirschner testified that plaintiff never had documented objective, and abnormal findings on a neurologic exam. He also testified that plaintiff's MRI scans in 2017 and 2021 were essentially the same, with no findings of traumatic injury and concluded that plaintiff's complaints were not corroborated by objective findings. Dr. Roy testified that plaintiff's 2017 MRIs showed degenerative disk disease, but no evidence of an active injury. Plaintiff's brain MRI showed no evidence of trauma to the skull or brain. Without an "objectively manifested impairment," plaintiff cannot prove serious impairment of a body function. *McCormick*, 487 Mich

at 215; *Piccione*, 327 Mich App at 20. The jury evidently gave more weight to these witnesses' testimony, and we must defer to their judgment. See *Barnes*, 334 Mich App at 551-552.

Defendant's experts also testified that plaintiff did not suffer a cognitive impairment that disrupted his life. Dr. Metler testified that plaintiff's test results showed signs that he was deliberately performing poorly. Dr. Kirschner testified that plaintiff's performance on testing did not accurately reflect his true cognitive abilities and that his complaints of ongoing pain could not be taken at face value. A jury could infer from this testimony that plaintiff was malingering or experiencing deficits that were not caused by physical injury sustained in the accident. Although plaintiff's family members testified that plaintiff significantly lost his ability to manage household responsibilities and to participate in family and social life, it was the jury's prerogative to give greater weight to Dr. Kirschner's and Dr. Metler's testimony. See *People v Baskerville*, 333 Mich App 276, 283-284; 963 NW2d 620 (2020) ("The jury may choose to believe part of a witness's testimony and disbelieve another part of the same witness's testimony.").

Plaintiff argues that he sustained injuries to his head, neck, and back, and that injury to these areas "legally constitute a serious impairment" even if the impairment is temporary. Plaintiff cites no legal authority in support of this argument. "An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority." *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015). Plaintiff's argument also is contrary to the no-fault statute, which defines "serious impairment of a body function" according to a set of criteria, namely "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). The statute does not carve out any category of injuries according to body part that automatically qualify as a threshold injury. For these reasons, the trial court did not abuse its discretion when it denied plaintiff's motion for a new trial or for JNOV.

## IV. DOUBLE-BILLING

Next, plaintiff contends that he was denied a fair trial because the trial court allowed defendant to cross-examine Kambo regarding claims she double billed for services provided to plaintiff and to Dristan Dushkaj, plaintiff's son and Kambo's husband. We disagree.

### A. STANDARDS OF REVIEW

A new trial may be granted on grounds of "[i]rregularity in the proceedings of the court, jury, or prevailing party, or an order of the court or abuse of discretion which denied the moving party a fair trial." MCR 2.611(A)(1)(a). A trial court's decision whether to admit evidence is reviewed for an abuse of discretion. *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 153; 908 NW2d 319 (2017). The trial court abuses its discretion when it chooses "an outcome that is outside the range of principled outcomes." *Id.* at 153-154. The trial court's rulings interpreting and applying the rules of evidence to the facts are reviewed de novo. *Id.* at 154.

### B. ANALYSIS

Evidence is relevant "if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence." MRE 401.[1]  Generally, relevant evidence is admissible, except as otherwise provided by law, but evidence that is not relevant is not admissible.  MRE 402.  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  MRE 403.

Under MRE 608(b):

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Kambo's testimony was significant evidence supporting plaintiff's claim that the 2017 accident left him unable to live his normal life.  She described his active life before the accident, contrasting it to his present alleged physical and cognitive weaknesses.  Plaintiff relied substantially on Kambo's anecdotal and observational testimony to counter defendants' experts' testimony that his diagnostic images showed mainly degenerative changes and that he deliberately performed poorly in cognitive testing.  Plaintiff attempted to persuade the jury that the persons who knew him and who observed his disability were more reliable witnesses than physicians who examined him once on defendant's behalf.  Defendant therefore was entitled to the opportunity to impeach her, and questioning her regarding specific instances of conduct relevant to her character for truthfulness was thus permissible.  See MRE 608(b).  The testimony was also relevant to plaintiff's credibility regarding his need for services because if Kambo was able to divide her time providing care between plaintiff and Dritan, plaintiff's need for constant help would be cast into doubt.

Plaintiff also argues that there was no evidence that Kambo double billed the insurer for services provided to Dritan and plaintiff.  Kambo admitted that she cared for plaintiff and Dritan for eight hours, including on the days that she worked a 12-hour shift.  She explained that she was able to provide services to both of them at the same time because they all shared the same home.  Jurors, however, could construe this testimony as an admission of double-billing.

Plaintiff also argues that the evidence was unfairly prejudicial under MRE 403 because plaintiff could be tainted by the suggestion that a close member of his family fraudulently billed the insurer.  The balance between probative value and unfair prejudice is highly subjective.  On

---

[1] Our citations to and quotations from the Rules of Evidence refer to the version of the rules in effect at the time of trial.

the one hand, evidence that Kambo, and possibly Dristan, were dishonest in their dealings with a no-fault insurer could indirectly portray plaintiff as guilty by association, especially because he lived with them and relied on their help. On the other hand, the importance of Kambo's testimony correlates to the importance of defendant's need to counter the testimony. In view of this balance, we do not find that the trial court's choice fell outside the range of reasonable outcomes. *Bradley*, 345 Mich App at 131. We therefore conclude that the trial court did not abuse its discretion in permitting cross-examination regarding Kambo's double-billing attendant care services for plaintiff and Dritan, and the court properly denied plaintiff's motion for a new trial or JNOV on this basis.[2]

## V. DEFENDANT'S CROSS-APPEAL

On cross-appeal, defendant argues that the trial court erred in denying his motion for case evaluation sanctions under the now-repealed MCR 2.403(O). We disagree.

## A. STANDARDS OF REVIEW

A trial court's decision whether to award case evaluation sanctions is reviewed de novo. *Peterson v Fertel*, 283 Mich App 232, 239; 770 NW2d 47 (2009). The interpretation and application of a court rule is also reviewed de novo as a question of law. *Reitmeyer v Schultz Equip & Parts Co, Inc*, 237 Mich App 332, 336; 602 NW2d 596 (1999). However, "a trial court's decision whether application of new court rules would 'work injustice' under MCR 1.102 entails an exercise of discretion." *Id.* The trial court abuses its discretion when it chooses "an outcome that is outside the range of principled outcomes." *Mitchell*, 321 Mich App at 153-154.

## B. ANALYSIS

Before January 1, 2022, MCR 2.403(O)(1) allowed for the imposition of sanctions against a party who rejected a case evaluation award and failed to obtain a more favorable verdict at trial.[3] On December 2, 2021, the Supreme Court amended MCR 2.403, effective January 1 2022, to remove Subrule (O), thereby eliminating the sanctions provision. See 508 Mich lxxix, lxxixiii-lxxxv (2021). The Staff Comment to the 2021 amendment states that it was intended to "improve

---

[2] Plaintiff also contends that the trial court abused it discretion when it denied his request to recall Dritan for rebuttal testimony and to call a radiology expert to rebut the testimony of defendant's radiology expert. However, plaintiff failed to preserve his argument concerning Dritan by making such an offer of proof in the trial court. See *Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 291; 730 NW2d 523 (2006). In addition, plaintiff's assertions concerning the radiology expert are not supported by citations to the record. See *Cheesman*, 311 Mich App at 161. Because plaintiff failed to properly preserve these arguments, we are without authority to review them. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; ___ NW3d ___ (2023).

[3] "Verdict" under former MCR 2.403(O)(1) included: (a) a jury verdict, (b) a judgment by the court after a nonjury trial, and (c) a judgment entered as a result of a ruling on a motion after rejection of a case evaluation award. See former MCR 2.403(O)(2).

the case evaluation process in various ways including . . . removing sanctions provisions . . . ." Defendant argues that he was entitled to case evaluation sanctions under former MCR 2.403(O)(1), and the trial court erred by failing to apply the former rule, which was in effect at the time the facilitation was conducted and when the parties decided whether to accept or reject the facilitation award.

MCR 1.102 states:

> These rules take effect on March 1, 1985. They govern all proceedings in actions brought on or after that date, and all further proceedings in actions then pending. A court may permit a pending action to proceed under the former rules if it finds that the application of these rules to that action would not be feasible or would work injustice.

This rule also applies to later amendments to the court rules. *People v Jackson*, 465 Mich 390, 396; 633 NW2d 825 (2001), citing *Reitmeyer*, 237 Mich App at 337; see also 1 Dean & Longhofer, Michigan Court Rules Practice (4th ed), pp 4-5 ("The same principle [contained in MCR 1.102] has been applied to subsequently adopted or amended rules").

This Court has previously stated that " 'the norm is to apply the newly adopted court rules to pending actions unless there is reason to continue applying the old rules,' " such as when application of the new rule would work an injustice on a party. *Reitmeyer*, 237 Mich App at 337, quoting *Davis v O'Brien*, 152 Mich App 495, 500; 393 NW2d 914 (1986). "However, an injustice is not present merely because a different result would be reached under the new rules." *Reitmeyer*, 237 Mich App at 337 (quotation marks and citation omitted). Instead, "a new court rule would 'work injustice' where a party acts, or fails to act, in reliance on the prior rules and the party's action or inaction has consequences under the new rules that were not present under the old rules." *Id*. at 337-338 (quotation marks and citation omitted). There is no bright-line rule for determining when an amended or previous version of a rule applies in a given case. Instead, "a court must look more closely to the particular circumstances of the case at issue and at the purpose of the amendment." *Id*. at 342.

We see no reason to apply the prior version of the rule. Defendant argues that applying the current version of MCR 2.403 would cause an injustice because the threat of exposure to sanctions caused him to accept case evaluation despite his belief that plaintiff should not receive any damages. Defendant also argues that he refrained from making an offer of judgment under MCR 2.405 because MCR 2.405(E) would have precluded him from receiving costs where the decision made by the one-person case evaluation "panel" was unanimous. We are not persuaded that defendant was disadvantaged by accepting the facilitation award in order to avoid sanctions. Plaintiff's decision to proceed to trial led to a more favorable outcome for defendant. Moreover, the trial court granted defendant's motion for costs. Defendant was, therefore, partly compensated for the costs of participating in a trial that ultimately yielded nothing to plaintiff.

Defendant also argues that the parties' agreement that "the facilitator's award will have the same force and effect as a case evaluation award under MCR 2.403" should be treated as a contractual agreement to apply the version of MCR 2.403 in effect at the time of the agreement. "In construing contractual language, the goal is to determine the intent of the contracting parties,

the best indicator of which is the language used." *Swanson v Bittersweet Ski Resort, Inc*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366258); slip op at 10 (quotation marks and citation omitted). "This Court examines contractual language and gives the words their plain and ordinary meanings . . . while also giving effect to every word or phrase as far as practicable." *Id*. at ___; slip op at 10 (quotation marks and citation omitted). "[U]nambiguous contracts are not open to judicial construction and must be enforced as written." *Id*. at ___; slip op at 10 (quotation marks and citation omitted; alteration in original). Here, the sentence, "the facilitator's award will have the same force and effect as a case evaluation award under MCR 2.403," unambiguously means that the parties agree to regard the facilitation award according to the same terms and conditions that apply to a case evaluation award. As discussed above, case evaluation awards are governed by MCR 2.403, which is subject to amendments that may be applied to awards issued before the date that the amendments take effect. Accordingly, the trial court did not err when it denied defendant's motion for case evaluation sanctions.

Affirmed. Defendant, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly
/s/ Adrienne N. Young